

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0305-13

**WILKIE SCHELL COLYER, JR., Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

**COCHRAN, J., delivered the opinion of the unanimous Court.**

## O P I N I O N

A jury convicted appellant of driving while intoxicated. The trial judge denied his motion for new trial, which alleged that outside influences were improperly brought to bear on the jury foreman. The court of appeals, over a dissent, held that the trial court abused its discretion in denying appellant's motion for new trial alleging juror misconduct.[1] Because

---

[1] *Colyer v. State*, 395 S.W.3d 277, 283 (Tex. App.—Fort Worth 2013) ("Because the uncontroverted evidence in this case established that the foreman in Appellant's trial changed his vote to guilty and that his vote was contrary to a fair expression of his opinion, we hold that the trial court abused its discretion by denying Appellant's motion for new trial.").

appellant's "outside influence" argument misapplies our holding in *McQuarrie v. State*,[2] we granted the State's petition for discretionary review.[3] Personal pressures—such as a fear of inclement weather or concern about a child's illness—are not "outside influences" under Texas Rule of Evidence 606(b). Accordingly, juror testimony about these issues is not admissible. Because appellant failed to prove that the jury's verdict was tainted by juror misconduct, the trial judge did not abuse his discretion in denying appellant's motion for new trial. We therefore reverse the court of appeals.

## I.

At about 1:30 a.m., appellant was driving home alone after having dinner with friends. Police found him stopped in the middle of an intersection, passed out behind the wheel. At trial, the State presented a video of appellant's performance on the field sobriety tests and of his refusal to submit to a breath test, as well as testimony from the arresting officer. The defense argued that appellant was overworked and sleep deprived, which caused him to fall asleep at the wheel while waiting for the light to change.

The jury found appellant guilty of DWI. After the jury returned its verdict, the judge

---

[2] 380 S.W.3d 145 (Tex. Crim. App. 2012).

[3] We granted the State's three grounds for review:

(1)    Should the Court of Appeals presume that the sole witness at a motion for new trial is telling the truth—when the trial judge could have made its decision to deny the motion based on its reasonable disbelief of that witness?

(2)    Does Rule 606(b) permit a juror's testimony that outside information pressured him to quickly reach a verdict despite the fact that the information did not influence him one way or the other?

(3)    Must the prevailing party in a motion for new trial object to inadmissable evidence?

asked the jury foreman, Mr. Aguilera, if the verdict was unanimous.   Mr. Aguilera

responded, "Yes, your Honor."  Based on the foreman's body language while responding,

appellant's counsel asked for the jury to be polled.[4]  Mr. Aguilera's initial statement when

polled was, "It was a majority—It was—Yes, Your Honor."  When asked to clarify, he said,

"We all took a poll and we voted unanimously."

> During the punishment phase, appellant's counsel noted that
>
> the juror said that it was a majority and then I approached the Court about my
> concern about that wording and his body language, and I just want to put on
> the record what I noticed was that he appeared upset. He appeared frustrated.
> He was—He rolled his eyes. He kind of huffed when he was asked.
>     You then asked him again, and he rolled his eyes and—and just sort of
> very abruptly said, ["]hahh.["] I'd also like to point out that—just for the
> record, we were busy—that we got the note about—dispute about police
> testimony, then we asked them to clarify . . . the clarification came back that
> it was actually testimony about the defense witness. In the process of us trying
> to pull that testimony and get it for them, they came back with the verdict
> pretty abruptly without the testimony transcript being given—the transcript
> being given to them.
>     So just based on his body language, his nonverbal expressions
> and—and what I watched him say when he—after he said it was a majority,
> which, obviously, legally it has to be unanimous, I would ask the Court to
> withhold sentencing until a later date.

---

[4] The full exchange was as follows:
Defense:      Your Honor, we would like the jury polled, please.
Judge:        All right. Mr. Aguilera, was that your verdict?
Aguilera:     It was a majority—It was—Yes, Your Honor.
Judge:        Okay. I have to ask each of you individually. . . .
Defense:      (On-the-record bench conference.) I'm concerned because Mr. Aguilera just said that
              was a majority and he hesitated. . . .
Judge:        Okay. Mr. Aguilera, you made the statement it was a majority verdict. Was it
              unanimous or—Would you explain to me what you meant by that?
Aguilera:     We all took a poll and we voted unanimously, Your Honor.

Two months later, the trial judge sentenced appellant to twenty days in jail, a $550 fine, and a six-month suspension of his driver's license. Appellant filed a motion for new trial, alleging juror misconduct. At the hearing on the motion for new trial, appellant called Mr. Aguilera as his sole witness. From the start, the State opposed the motion, arguing that there was no legal basis for a hearing because "[a]ny evidence outside of the record which the Defense at this time wishes to present to the Court is specifically prohibited by Rule 606(b) of the Texas Rules of Evidence." The trial judge allowed the hearing to proceed, but limited the scope of the testimony to the two Rule 606(b) exceptions.[5] The State then objected to the content of Mr. Aguilera's testimony nine separate times.

Mr. Aguilera testified that his verdict was not a fair expression of his opinion due to an array of "outside influences," including the late time of day, the distance to the parking lot, the approaching inclement weather,[6] and the amount of time it was taking to respond to the jury's notes. Mr. Aguilera was particularly affected by a call he received during deliberations from his doctor informing him that his daughter had tested positive for MRSA.[7]

---

[5] "[A] juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve." TEX. R. EVID. 606(b).

[6] Mr. Aguilera testified, "It was extremely windy, dark, clouds, people were—it was—worried about the tornado that had hit before, so it was panic. There were phone calls made while we were waiting on paperwork."

[7] Mr. Aguilera said that his doctor called because "I have a severe case of chronic arthritis due to an anthrax injection that was given to me before I went to Desert Storm, Kuwait. My daughter had an abscess on her body which was covered—which I was covered in 90 percent of the year prior. She became positive for MRSA." Methicillin–Resistant Staphylococcus Aureus (MRSA) is a serious staph infection caused by an antibiotic-resistant bacterium.

He testified that this call influenced him to change his verdict: "[He] had to concede to the other people and get home to [his] daughter immediately." He agreed that the deliberations were cut short because all of the jurors were affected by "outside influences."[8]

After Mr. Aguilera testified, the State reasserted that "[n]othing that Mr. Aguilera has testified to can even be considered an improper outside influence. . . . The very purpose of 606(b) is so that defendants don't have an opportunity to relitigate their cases, that they don't have an opportunity to talk to jurors and have them change their minds." The trial judge denied the motion for new trial without comment.

The court of appeals majority reversed, finding that "the trial court abused its discretion by denying Appellant's motion for new trial."[9] First, because the State did not object to each individual piece of testimony, cross-examine Mr. Aguilera, or present evidence from other jurors to contradict his testimony, the court called Mr. Aguilera's testimony "uncontroverted."[10] Next, the court stated that, because the State did not dispute the

---

[8] Defense counsel asked Mr. Aguilera the following question:
> Do you feel that there were outside influences such that you've mentioned; the time of day, parking, which required a ride to the shuttle bus and their concern over when that stopped, the weather, the calls from home regarding their concern and the amount of time that it was taking to get certain things that you requested via the juror notes, do you feel that those outside influences combined caused the deliberations to proceed quicker or in a manner that—that was—that the deliberations were abbreviated and that they were actually cut off so that y'all could be dismissed and everyone could attend to get their cars and avoid the weather and that sort of thing?

Mr. Aguilera responded, "Absolutely."

[9] *Colyer*, 395 S.W.3d at 283.

[10] *See id.* at 282 ("All this testimony [by Mr. Aguilera] went unchallenged by the State, and there was no conflicting evidence for the trial court to resolve against it. Thus, Aguilera's testimony

testimony, there was no need to do a 606(b) analysis.[11]   Finally, because Mr. Aguilera's

testimony unequivocally established that "outside influences" caused him to change his vote,

he reached his verdict in a "manner other than a fair expression of the jurors' opinion."[12]

Therefore, the trial judge should have granted appellant's motion for new trial.[13]

The dissent argued that the trial judge did not abuse his discretion because the

telephone call and the weather were "personal pressures," not outside influences.  Therefore,

Mr. Aguilera's testimony was inadmissible under Rule 606(b).[14]   Furthermore, the dissent

noted that the State objected to the entire hearing on Rule 606(b) grounds and repeated this

objection throughout, thus, the court of appeals should have applied Rule 606(b).[15]

## II.

### A.    Standard of Review

We review a trial judge's denial of a motion for new trial under an abuse of discretion

---

established without dispute that an outside influence caused him to vote differently than he otherwise would have.").

[11] *Id.* ("Aguilera testified without objection, with no cross-examination, and against no controverting evidence that outside influences caused him to change his verdict to guilty despite his belief that the State had not proven its case beyond a reasonable doubt, in order to allow him to leave the jury room immediately.  Contrary to the State's position, we will not hold that rule 606(b) applies to testimony that comes in unopposed by objection.").

[12] *Id.* at 283.

[13] *Id.*; TEX. R. APP. P. 21.3(c) (listing reasons defendant must be granted a new trial).

[14] *Colyer*, 395 S.W.3d at 283 (Walker, J., dissenting).

[15] *Id.* at 284 n.2.

standard.[16]  "We do not substitute our judgment for that of the trial court; rather, we decide

whether the trial court's decision was arbitrary or unreasonable."[17]  A trial judge abuses his

discretion in denying a motion for new trial when no reasonable view of the record could

support his ruling.[18]  We view the evidence in the light most favorable to the trial judge's

ruling and presume that all reasonable factual findings that could have been made against the

losing party were made against that losing party.[19]

At a motion for new trial hearing, the judge alone determines the credibility of the

witnesses.[20]  Even if the testimony is not controverted or subject to cross-examination, the

trial judge has discretion to disbelieve that testimony.[21]  In explaining the distinction between

"uncontradicted testimony" such as Mr. Aguilera's and "undisputed facts" (such as those

facts both parties agree to or that are subject to judicial notice), we have noted that "a

---

[16] *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001).

[17] *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006).

[18] *Id.* at 763.

[19] *Quinn v. State*, 958 S.W.2d 395, 402 (Tex. Crim. App. 1997) (upholding trial judge's denial of motion for new trial based on juror misconduct, noting that court of appeals had failed to give appropriate deference to trial judge's credibility determinations).

[20] *Salazar*, 38 S.W.3d at 148.

[21] *Masterson v. State*, 155 S.W.3d 167, 171 (Tex. Crim. App. 2005) ("Appellant contends, however, that the trial court had no discretion to disbelieve appellant's testimony about requesting counsel before the magistrate because the State never controverted that testimony.  But the trial court has discretion to disbelieve testimony even if it is not controverted."); *see also Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006); *Hernandez v. State*, 161 S.W.3d 491, 501 (Tex. Crim. App. 2005).

defendant's mother may testify that the defendant was with her in Oshkosh on the night of the murder. Even though the State does not cross-examine the defendant's mother, the jury is not required to believe her uncontradicted testimony."[22]

## B.    Rule 606(b) of the Texas Rules of Evidence

Early English common law allowed advocates to harass the jury after trial to elicit admissions of juror misconduct in support of a motion for new trial.[23] In essence, after the jury trial, the jury was tried. In 1785, Lord Mansfield ended this practice by prohibiting judges from admitting testimony from jurors impeaching their verdict under the principle that "no one should be allowed to allege his own turpitude."[24]

Texas initially followed Lord Mansfield's rule strictly,[25] but the Legislature adopted an exception to the common law juror-incompetency rule in 1905 that eventually resulted in "a far wider scope of inquiry into the jury's deliberation than any other state."[26] As a result,

---

[22] *Evans*, 202 S.W.3d at 163.

[23] *See* 8 JOHN H. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2352, at 696 (McNaughton rev. 1961) (collecting cases showing that, under early common law, the "unquestioned practice" had been to receive juror testimony of misconduct to invalidate the verdict).

[24] *Vaise v. Delaval*, 99 Eng. Rep. 944 (K.B. 1785) (rejecting juror affidavits that a decision had been reached by chance because "[t]he Court cannot receive such an affidavit from any of the jurymen themselves").

[25] *See St. Louis S.W. Ry. Co. v. Ricketts*, 70 S.W. 315, 317 (Tex. 1902) (stating that the Court has "uniformly denied the competency" of juror affidavits or testimony to attack the jury's verdict based on claims of "irregularities and improprieties of different kinds").

[26] *See Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 367–68 (Tex. 2000) (citation omitted) (discussing the history of Rule 606(b) of the Texas Rules of Evidence); *see generally* David E. Keltner, *Jury Misconduct in Texas: Trying the Trier of Fact*, 34 Sw. L.J. 1131 (1981) (discussing

jury verdicts were frequently attacked by disgruntled jurors and reversed for "trivial misconduct."[27] The Texas Supreme Court took action in 1983 by adopting Texas Rule of Civil Evidence 606(b),[28] which, except for two narrow exceptions, prohibits post-verdict juror testimony to impeach a verdict.[29] Thus, a juror is not permitted to testify about any events or statements occurring during jury deliberations, any of the jurors' mental processes, or how an improper outside influence actually affected the jurors.[30]

the evolution and application of the pre-1983 Texas rule).

[27] 1 MCCORMICK & RAY, TEXAS LAW OF EVIDENCE § 394, at 331-32 (2d ed. 1956).

[28] The original Civil Rule 606(b) is, for all purposes relevant to this case, indistinguishable from the current Rule 606(b), which applies in both civil and criminal trials. Rule 606(b) states:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes. However, *a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror*; or (2) to rebut a claim that the juror was not qualified to serve.

TEX. R. EVID. 606(b) (emphasis added). Texas Rule 606(b) differs from its federal counterpart because it does not include the exception that allows a juror to testify "whether extraneous prejudicial information was improperly brought to the jury's attention." FED. R. EVID. 606(b).

[29] *Golden Eagle*, 24 S.W.3d. at 367–68.

[30] *See Robinson Elec. Sup. Co. v. Cadillac Cable Corp.*, 706 S.W.2d 130, 132 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (noting the change from prior law, which permitted a juror to testify to matters, statements, and overt acts occurring during deliberations and which insulated only the mental processes of jurors); *see generally*, 3 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 247 at 51 (2d ed. 1994) (Rule 606(b) "bars any testimony or statement by a juror (whether proved by affidavit or in any other way) offered to prove virtually anything about deliberations—any matter occurring or statement made, or the effect of anything on the mind or emotions of any juror, or the mental processes of the juror whose testimony or statement is offered.").

The purpose of Rule 606(b) is to limit "the role jurors may play in attacking the validity of a verdict."[31]  This limitation serves four important policy interests:  It encourages jurors to candidly discuss the case,[32] protects jurors from post-trial harassment,[33] promotes finality,[34] and prevents tampering and fraud.[35]  In sum, Rule 606(b) protects a good system that cannot be made perfect.[36]  As Judge Learned Hand cautioned, without Rule 606(b), judges would become like mythological "Penelopes,[37] forever engaged in unraveling the webs they wove."[38]  To this day, courts try to maintain the balance between the goal of "a trial by a jury free from bias or misconduct" and the need to prevent losing parties from

---

[31] 1 STEVEN GOODE ET AL., TEXAS PRACTICE SERIES: GUIDE TO THE TEXAS RULES OF EVIDENCE, § 606.2, 672 (3d ed. 2002).

[32] *Golden Eagle*, 24 S.W.3d. at 367.

[33] *Id.*

[34] *Id.*

[35] *See United States v. Eagle*, 539 F.2d 1166, 1170 (8th Cir. 1976) (the purpose of the rule is to prevent "fraud by individual jurors who could remain silent during deliberations and later assert that they were influenced by improper considerations.").

[36] *See Tanner v. United States*, 483 U.S. 107, 120 (1987) ("There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior.  It is not at all clear, however, that the jury system could survive such efforts to perfect it.").

[37] As a ploy to delay remarriage, Penelope, the wife of Odysseus, pretended to weave a linen shroud.  She was always weaving but the shroud was never finished because every night she unraveled her weaving.

[38] *Jorgensen v. York Ice Machinery Corp.*, 160 F.2d 432, 435 (2d Cir. 1947).

trying the jury.[39] But, as a general proposition, Rule 606(b) and cases from the United States Supreme Court and the Texas Supreme Court have struck the balance in favor of the privacy of juror deliberations.[40]

The most common, but disallowed, means to impeach the jury's verdict is the "disgruntled juror." As commentators have noted, "[a] juror who reluctantly joined a verdict is likely to be sympathetic to overtures by the loser, and persuadable to the view that his own consent rested on false or impermissible considerations[.]"[41] Allowing such jurors to impeach their former verdicts would give the losing party much to gain and little to lose in harassing all of the former jurors in a search for a "disgruntled" one. Rule 606(b) flatly prohibits "disgruntled juror" evidence either by affidavit or testimony.

However, Rule 606(b) is not a blanket rule prohibiting all juror testimony. The most important exception to the juror-incompetency rule is that of "an outside influence" that is "improperly brought to bear" upon a juror. The purpose of this exception is to allow proof of external pressures that are likely to affect the verdict.[42] Although not explicitly defined

---

[39] *See Golden Eagle*, 24 S.W.3d. at 367–68 (discussing the history of Rule 606(b) of the Texas Rules of Evidence).

[40] *See Tanner*, 483 U.S. at 120; *Golden Eagle*, 24 S.W.3d. at 367; *See also* FED. R. EVID. 606(b) advisory committee's note 1972 ("the Rule offers an accommodation between these competing considerations.").

[41] 3 MUELLER & KIRKPATRICK, *supra* note 30, § 247, at 57.

[42] *See id*. § 250, at 77 (noting that "blatant efforts by outsiders to interfere with deliberations" are rare; "[f]ar more common are contacts with outsiders that seem ambiguous and are plainly not part of a plot to determine outcome.").

in Rule 606(b), this Court explained in *McQuarrie* that an "outside influence" is "something originating from a source outside of the jury room *and* other than from the jurors themselves."[43]

Therefore, a Rule 606(b) inquiry is limited to that which occurs both outside of the jury room and outside of the jurors' personal knowledge and experience.[44] External events or information, unrelated to the trial, which happen to cause jurors to feel personal pressure to hasten (or end) deliberations are not "outside influences" because those pressures are caused by a juror's personal and emotional reaction to information that is irrelevant to the trial issues.[45] Those kinds of internal personal pressures are normal and may be expected in any trial. Furthermore, they are not "improperly brought to bear" upon the juror in a manner designed or likely to influence deliberations.[46] For example, hearing a radio weather report

---

[43] *McQuarrie v. State*, 380 S.W.3d 145, 154 (Tex. Crim. App. 2012) (emphasis added).

[44] *Id.* ("The internet research occurred outside of the jury room and outside deliberations. . . [and the information] originated from a source on the internet, a source other than the juror themselves.").

[45] *See* 3 MUELLER & KIRKPATRICK, *supra* note 30, § 250, at 80 ("[M]any external contacts are viewed as harmless and do not require a new trial even if they occur when the jury is sequestered during deliberations, and in most cases more than the contact alone must be shown to secure a new trial.").

[46] *See United States v. Branco*, 516 F.2d 816, 819 (2nd Cir. 1975) ("Where an unauthorized private communication, contact, or tampering with a juror during a trial does not relate to a matter pending before the jury, there is no right to a new trial absent a showing of prejudice by the defendant."); *Drone v. State*, 906 S.W.2d 608, 617 (Tex. App.—Austin 1995, pet. ref'd) (although juror had unauthorized discussions with a potential witness during the trial, there was no showing that the two discussed trial facts or issues, therefore defendant was not entitled to new trial based on juror misconduct).

of an approaching storm may influence a juror to quicken his deliberations, but that weather report is not (1) an "outside influence" or (2) improperly brought to bear upon the juror. The juror himself decided to hasten deliberations, based on information that had nothing to do with the trial itself or with its legal or factual issues.

Typical situations in which juror testimony is allowed as an "outside influence" under Federal Rule 606(b) are threats, bribes, communications with court personnel, and assaults upon a jury member.[47] Correspondingly, "outside influence" has been interpreted by Texas courts to include factual or legal information conveyed to the jurors by a bailiff or some other unauthorized person who intends to affect the deliberations.[48] But the outside influence exception does not include influences such as coercion by a fellow juror[49] or the discussion of a juror's own personal knowledge.[50] Except for (1) an "outside influence" as defined in *McQuarrie* that is (2) "improperly brought to bear" upon a juror, Rule 606(b) continues to prohibit juror testimony to impeach a verdict.

---

[47] 1 GOODE, *supra* note 31, § 606.4, at 683; 3 MUELLER & KIRKPATRICK, *supra* note 30, § 250, at 77–79.

[48] *Soliz v. State*, 779 S.W.2d 929, 932 (Tex. App.–Corpus Christi 1989, no pet.) ("To constitute 'outside influence,' the source of the information must be one who is outside the jury, *i.e.*, a non-juror, who introduces the information *to affect the jury's verdict.*") (emphasis added).

[49] *Mitchell v. S. Pac. Transp. Co.*, 955 S.W.2d 300, 322 (Tex. App.—San Antonio 1997, no writ), *overruled on other grounds by Golden Eagle Archery, Inc., v. Jackson*, 24 S.W.3d. 362 (Tex. 2000).

[50] *Id*. at 322; *Soliz*, 779 S.W.2d at 932.

## III.

**A.    Credibility of Testimony**

In its first ground for review, the State argues that the court of appeals should not have accepted Mr. Aguilera's post-trial testimony at face value, thereby substituting its own credibility determination for the trial judge's.[51]   Appellant argues that no evidence contradicted Mr. Aguilera's testimony, and therefore the court of appeals did not have to accept the trial judge's decision to disbelieve the testimony.

However, the trial judge was entitled to discredit Mr. Aguilera's post-trial testimony, even if it had been wholly uncontradicted.[52]  In fact, Mr. Aguilera's post-trial testimony that his desired verdict had been "not guilty" was inconsistent with his trial-time statement that the guilty verdict was "unanimous."[53]  The policy of upholding the finality of verdicts was served in this case by polling the jury.  At that time, Mr. Aguilera said that he agreed with the guilty verdict.  After the jurors were excused, the time for post-verdict doubts had

---

[51] *Colyer*, 395 S.W.3d at 282 ("Aguilera's testimony *established without dispute* that an outside influence caused him to vote differently than he otherwise would have.") (emphasis added).

[52] *Quinn v. State*, 958 S.W.2d 395, 401–02 (Tex. Crim. App. 1997) (trial court is sole judge of witnesses' credibility at a motion-for-new-trial hearing alleging juror misconduct); *see also Masterson v. State*, 155 S.W.3d 167, 171 (Tex. Crim. App. 2005) (trial judge has discretion to disbelieve testimony even when it is uncontroverted).

[53] This change in position is similar to recantation cases in which a witness who testified under oath at trial to certain facts later signs an affidavit or gives testimony contradicting or recanting the original trial testimony.  A trial judge is not required to believe the recantation testimony over the original testimony. *See Keeter v. State*, 74 S.W.3d 31, 37-39 (Tex. Crim. App. 2002) (trial judge did not abuse his discretion in denying motion for new trial based on disbelief of complainant's post-trial recantation).

passed.[54]   Given Mr. Aguilera's shifting testimony, a reasonable fact finder could have

concluded that the juror had been somewhat reluctant at the time of the verdict, but it was not

until after weeks of reflection that he decided that he wanted to change his vote.  This is

precisely the type of "disgruntled juror" who suffers buyer's remorse that Rule 606(b)

prohibits from testifying to impeach his own verdict.[55]  A juror's vote, when polled in open

court, is a "final sale" item; it cannot be exchanged because that juror later has buyer's

remorse.  Therefore, the trial judge was not required to credit Mr. Aguilera's post-trial

testimony and would not have  abused his discretion by denying appellant's motion for new

trial on that ground alone.

**B.     Outside Influence**

Even if the trial judge fully credited Mr. Aguilera's testimony, he had to then make

a Rule 606(b) analysis to determine if the juror's personal desire to get home quickly would

---

[54] *See People v. Jacobson*, 440 N.Y.S.2d 458, 462 (N.Y. Sup. Ct. 1981) ("The policy underlying the finality of a verdict is reinforced by the practice of polling the jury after the foreman states the verdict.  When the verdict . . . was returned, the jury was formally polled, and everyone declared his or her assent.  This procedure provided each juror the opportunity to speak up and/or dissent.  The time for post-verdict doubts had passed.") (citation omitted).

[55] The Senate Report accompanying the 1974 Enactment of Federal Rule 606(b) observed that the Rule would prevent "the harassment of former jurors by losing parties as well as the possible exploitation of disgruntled or otherwise badly-motivated ex jurors."  Senate Report No. 93–1277, 1974 U.S.C.C.A.N. 7051, quoted in the advisory committee notes for the 1974 Enactment of Federal Rule 606(b). *See State v. Watts*, 907 A.2d 147, 152 (Me. 2006) (Rule 606(b) protects jurors in their communication to fellow jurors made in the confidence of the jury room and prevents the impeachment of jury verdicts by jurors who later have a change of heart; juror testified about his "depression, insomnia, and the anxiety he felt following the outcome of the Presidential election-an election that occurred more than five months prior to the trial.  This is the very kind of attempt by a disgruntled juror to set aside a verdict that Rule 606(b) is designed to prevent.").

qualify as an "outside influence" before considering that testimony to impeach the verdict.[56]

We conclude that neither the juror's receipt of a doctor's call concerning his daughter nor his

personal desire to get home quickly qualified as an "outside influence." Thus, under Rule

606(b), the trial judge was not permitted, much less required, to consider Mr. Aguilera's

testimony to impeach his verdict.

Appellant argues that the stormy weather and a call from Mr. Aguilera's doctor are

"outside influences" because that information came from outside the jury room.   But

appellant's use of the *McQuarrie* definition of "outside influence" takes the term outside of

its proper context and scope.  An outside influence must come from outside the jury and its

deliberations, but not everything that comes from outside the jury room qualifies as an

outside influence for purposes of the rule.  The "outside influence" exception in Rule 606(b)

does not include influences or information that are unrelated to the trial issues.[57]   Texas

---

[56] Contrary to the court of appeals, we find that, because the State objected to all testimony by Mr. Aguilera at the onset of the hearing, the evidence is not "uncontroverted."

[57] *See Tanner v. United States*, 483 U.S. 107, 122 (1987) ("[D]rugs or alcohol voluntarily ingested by a juror seems no more an 'outside influence' than a virus, poorly prepared food, or a lack of sleep"); *see also United States v. Falsia,* 724 F.2d 1339, 1343 n.10 (9th Cir. 1983) ("Juror testimony is admissible only concerning facts bearing on *extraneous influences* on the deliberation, in the sense of *overt acts of jury tampering.*") (quoting *United States v. Pimentel,* 654 F.2d 538, 542 (9th Cir. 1981)); *United States v. Oshatz*, 715 F. Supp. 74, 75 (S.D.N.Y. 1989) (juror testimony that jurors hastened deliberations because "they either had vacations which were planned or had to get back to work" did not meet the standard for jury misconduct); *United States v. Marques*, 600 F.2d 742, 747 (9th Cir. 1979) ("The sole alleged outside influence, then, was the judge's decision to keep the jury late a couple of nights.  This was within the discretion of the trial judge and was entirely proper."); *United States v. Kohne*, 358 F. Supp. 1046, 1051 (W.D. Pa. 1973) ("[If the juror] agreed to verdicts because he was concerned about his erratic oil heater, or his dogs and cat, or the conduct or statements of other jurors, and was anxious to get home, such would be insufficient to impeach the verdicts.").

cases[58] have concluded that allowing normal personal pressures to qualify as "outside influences" would jeopardize the finality of virtually every verdict.[59]  Under appellant's interpretation, a juror who has second thoughts about his vote could retroactively claim that a personal pressure, such as his job, marriage, or children, made him apprehensive and eager to conclude the deliberations.  Rule 606(b) explicitly prohibits post-verdict testimony about a juror's mental processes to impeach the verdict.[60]  Most jurors feel some type of normal internal, individual pressures throughout the entire trial.  For instance, the first day of trial, Mr. Aguilera informed the court that he was anxious to leave on time so that he could attend

---

[58] Although only Texas civil cases have addressed this Rule 606(b) issue, application of that rule should apply equally in both criminal and civil cases, as the language of the rule is the same for both.  *See McQuarrie v. State*, 380 S.W.3d 145, 167 n.31 (Tex. Crim. App. 2012) (Cochran, J., dissenting) (noting that courts in criminal cases should "look to civil cases for guidance on what constitutes an 'outside influence'") (quoting *In re S.P.*, 9 S.W.3d 304, 308–09 (Tex. App.—San Antonio 1999, no pet.)).

[59] *See Editorial Caballero, S.A. de C.V. v. Playboy Enters., Inc.*, 359 S.W.3d 318, 325 (Tex. App.—Corpus Christi 2012, pet. denied) ("Personal pressures felt by jurors to wrap up the deliberations do not constitute outside influences.")*; Perry v. Safeco Ins. Co.*, 821 S.W.2d 279, 281 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (holding that a juror "coerc[ing] jury members into quickly reaching a verdict" because of his family's vacation plans was not an "outside influence"); *Kirby Forest Indus., Inc. v. Kirkland*, 772 S.W.2d 226, 234 (Tex. App.—Houston [14th Dist.] 1989, writ denied) ("There are always pressures not only from employers but also family, recreation and personal preferences of jurors.  We do not consider these normal pressures to be an outside influence within the meaning of the rules.  Were they to be considered an outside influence, few verdicts would stand.").

[60] TEX. R. EVID. 606(b) ("[A] juror may not testify . . . to the effect of anything on the juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict[.]"); *see United States v. Farmer*, 717 F.3d 559, 564 (7th Cir. 2013) ("Rule 606(b)(1) bars juror testimony on, and court consideration of, the jury's internal deliberations, including the jurors' discussions and mental processes.  The rule also prohibits the court from 'receiv[ing] a juror's affidavit or evidence of a juror's statements on these matters.'  To preserve the privacy and independence of juries from well-intentioned efforts to perfect them, such evidence is simply not admissible.").

his daughter's graduation.[61]    Although his daughter's graduation occurred outside the courtroom, it does not constitute an "outside influence" under Rule 606(b).

Similarly, a radio report about a gathering storm and a telephone call from a doctor, though coming from outside the jury room and from a non-jury source, are not "outside influences" because they are not related to the trial in any manner.   For example, in *McQuarrie*, the "outside influence" was a juror's out-of-court internet research concerning the effects of a "date rape" drug that was at issue in the criminal trial.[62]   In this case, neither stormy weather nor a doctor's call concerning a medical condition were factual or legal issues relevant to appellant's DWI trial.[63]

---

[61] The first day of the trial Mr. Aguilera stated:
I definitely want to make sure we get a good and complete hearing with no rush.   It's just I was not anticipating being here past 5:15. It's my daughter's graduation, stuff that's going on, and I have to be there and it's very important for us—for me to be there by minimum of 5:30. . . . If the court requires me to stay of course. With no disrespect I will stay. I would just want to voice my opinion, and I think there's a couple other jurors here that have issues this afternoon that we need to get to.

[62] *McQuarrie*, 380 S.W.3d at 148.

[63] But suppose that the doctor and Mr. Aguilera started talking about the DWI trial and the defendant, and the doctor suddenly exclaimed, "Oh, I'm treating Mr. Colyer for alcoholism!  He's just not progressing well."   Now the contents of that phone call would constitute an "outside influence" because it was information that came from outside the jury room and from a non-juror and concerns a factual or legal issue in the trial.  Mr. Aguilera would be permitted to testify to that conversation had it occurred.   However, he would not be permitted to testify to how that conversation actually influenced him or his verdict because Rule 606(b) bars any testimony about the juror's mental processes.  "Whether the jury relied on improper evidence or instructions is not a question to be asked jurors, but 'is determined . . . on the basis of the nature of the matter and its probable effect on a hypothetical average jury.'" *United States v. Ianniello*, 866 F.2d 540, 544 (2d Cir. 1989) (citation omitted).  If the "hypothetical average jury" would be led astray by the doctor's statement and its verdict affected, then the defendant would be entitled to a new trial. *Id.*

Second, the outside influence must be "improperly brought to bear" with an intent to influence the juror.[64] For example, in *McQuarrie*, the juror who researched "date rape" drugs told other jurors about her finding in an effort to affect the verdict.[65] Here, of course, there is no suggestion that the doctor's call or the weather forecast was intended to influence the verdict. The Advisory Committee's notes and legislative history for Federal Rule 606(b) both use a purposeful threat made by someone against the safety of a member of the juror's family as an example of an outside influence.[66] In contrast, the commentary from the American Bar Association's standards for impeachment of the verdict specify that testimony from a juror "induced to agree with the verdict because his wife was ill and he was anxious to get home" would be inadmissable.[67]

The outside pressures in this case are neutral; they were not intended to persuade a juror to decide this case in any particular manner even if they might have influenced the jury to reach a verdict more quickly.[68] An "outside influence" is problematic only if it has the

---

[64] TEX.R. EVID. 606(b).

[65] 380 S.W.3d at 148.

[66] FED. R. EVID. 606 advisory committee's note 1974; H.R.Rep. No. 650, 93d Cong., 2d Sess. 9 (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 7075, 7083.

[67] THE AMERICAN BAR ASSOCIATION PROJECT ON MINIMUM STANDARDS FOR CRIMINAL JUSTICE, APPROVED DRAFT 1968, TRIAL BY JURY § 5.7(a), at 171.

[68] *See Seaton v. State*, 385 S.W.3d 85, 92 (Tex. App.—San Antonio 2012, pet. ref'd)("Neutral statements from the bailiff not directed to the jury's specific deliberations or verdict do not constitute an outside influence"); *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 661 (Tex. App.—Dallas 2002, pet. denied) ("[T]he bailiff informing the jury of the court's schedule was not misconduct" because it was neutral information).

effect of *improperly* affecting a juror's verdict in a particular manner—for or against a particular party. Therefore there was no "outside influence" improperly brought to bear upon Mr. Aguilera when he received a call from his doctor during deliberations or when he listened to the weather report.

Third, even if Mr. Aguilera had testified to an improper "outside influence" under Rule 606(b) he would still be prohibited from testifying about the effect of that information on him. Courts use the objective "reasonable person" test to decide what effect the particular "outside influence" in a case would have on the hypothetical average juror.[69] We do not allow testimony about the effect had upon this particular juror.[70] Therefore Mr. Aguilera's

---

[69] *McQuarrie v. State*, 380 S.W.3d 145, 154 (Tex. Crim. App. 2012) (we undertake an "objective analysis to determine whether there is a reasonable possibility that [the outside influence] had a prejudicial effect on the 'hypothetical average juror.'"); *United States v. Boylan*, 898 F.2d 230, 259–60 (1st Cir. 1990) (inquiry about extraneous influence does not extend to its subjective effect on minds of jurors); *United States v. Ianniello*, 866 F.2d 540, 544 (2d Cir. 1989) (under Fed. R. Evid. 606(b), the trial judge "should not allow inquiries into the mental impressions of the jurors. Whether the jury relied on improper evidence or instructions is not a question to be asked jurors. . . . If the 'hypothetical average jury' would have been coerced or led astray by improper *ex parte* statements of the judge or marshal, then a new trial will be necessary."); *United States v. Howard*, 506 F.2d 865, 869 (5th Cir. 1975) (stating that a court lacking "even the insight of a psychiatrist" must independently evaluate "the subjective effects of objective facts without benefit of couch-interview introspections" and without testimony from the jurors on how, if at all, the improper "outside influence" would have affected a hypothetical jury). *See generally,* 3 MUELLER & KIRKPATRICK, *supra* note 30, § 254 at 96–97 ("Juror affidavits or testimony can show only overt acts and who learned or knew or participated. Whether prejudice resulted from outside influences must be resolved by drawing inferences[.]").

[70] *See Mattox v. United States*, 146 U.S. 140, 148 (1892) ("'Public policy forbids that a matter resting in the personal consciousness of one juror should be received to overthrow the verdict, because, being personal it is not accessible to other testimony; it gives to the secret thought of one the power to disturb the expressed conclusions of twelve[.]'") (quoting Justice Brewer in *Perry v. Bailey*, 12 Kan. 539, 545 (1874)).

testimony about the personal pressure he felt to end deliberations is inadmissable even if either the phone call or the inclement weather had qualified as an "outside influence." In this case, the trial judge would not have abused his discretion in concluding that the "average hypothetical juror" would not be improperly influenced to return a guilty verdict instead of a not-guilty verdict because of radio reports of inclement weather or a doctor's telephone call concerning a child's illness.

In sum, because Mr. Aguilera's testimony about the weather and his child was unrelated to any factual or legal issue at trial, those matters did not qualify as an improper outside influence; therefore, the trial judge correctly refused to consider Mr. Aguilera's testimony or affidavit because both were inadmissable under Rule 606(b). The experienced trial judge did not abuse his discretion in denying appellant's motion for new trial based on juror misconduct. Therefore, we reverse the judgment of the court of appeals and affirm the judgment of the trial judge.

Delivered: April 30, 2014
Publish