# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-13-00037-CR

---

**Eddie Matthews, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
NO. 13992, THE HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury found appellant Eddie Matthews guilty of continuous sexual abuse of a young child for sexually abusing his eight-year-old stepdaughter. *See* Tex. Penal Code § 21.02(b), (c)(4). The trial court assessed appellant's punishment at confinement for 50 years in the Texas Department of Criminal Justice. *See id.* § 21.02(h). In two points of error on appeal, appellant complains about the denial of his motion for new trial and asserts that the evidence is insufficient to support his conviction. Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. We affirm the trial court's judgment of conviction.

## DISCUSSION

### Motion for New Trial

Appellant filed a motion for new trial alleging juror misconduct.[1]  Attached to the motion was the affidavit of juror L.E.  In his affidavit, L.E. expressed "concern about several of the problems that [he] witnessed during jury deliberations."  He first described a female juror who was "quite abusive, domineering and overpowering," and he opined that she intimidated jurors into changing their votes.  L.E. also recalled that another juror "shared her opinions continually" about "how CPS worked" based on knowledge she apparently obtained through her employment at a juvenile facility.  He stated that "the entire jury including [L.E.] ultimately relied and swayed in the direction of guilty based on her information," viewing it as information "coming from an 'expert.'"  L.E. also claimed that the jury "obviously misconstrued" the judge's instruction to keep deliberating after the jurors informed the court that they were deadlocked.  He opined that the court's instruction, in connection with the lengthy deliberations, "put increased pressure on jurors" because they "were under the belief that [they] could not leave until a verdict either way was reached," and they were tired and wanted to leave.  L.E. concluded his affidavit by averring that but for "these issues" "happening during the deliberations," appellant would not have been found guilty.

From the start, the State opposed appellant's motion for new trial.  The State filed a *Motion to Strike Juror Affidavit and Deny Defendant's Motion for New Trial*, which asserted that

---

[1] In his motion, appellant also asserted that "[t]he verdict [was] contrary to the law and the evidence."  This ground was not raised at the hearing on the motion for new trial or addressed by the trial court.  Nor does appellant raise this argument in his complaint about the trial court's denial of his motion for new trial.

L.E.'s affidavit did not raise claims of an outside influence and thus his affidavit was impermissible jury testimony and should not be considered by the trial court. At the hearing on the motion for new trial, appellant asked the court to take judicial notice of L.E.'s affidavit and called another juror, L.C., as his sole witness. Once again, the State opposed the motion, arguing that there was no legal basis for a hearing because the evidence appellant sought to offer was not evidence of an outside influence but only of what transpired during jury deliberations and was thus prohibited by Rule 606(b) of the Texas Rules of Evidence. The trial court impliedly overruled the State's objection by permitting the hearing to proceed, "noting" L.E.'s affidavit, and allowing L.C. to testify.

In her testimony, L.C. described an incident in which a juror who was "so overbearing," "upset," and "loud" physically confronted another juror who disagreed with her. L.C. indicated that the confrontation "definitely" changed the second juror's vote. L.C. also testified about another juror who worked with juveniles in some capacity who brought up information about "how CPS works." She said that other jurors expressed appreciation about this juror's clarification of the CPS process and relied on "her expertise" to help them "determine what they needed to." L.C. also indicated that at some point "the appellate process" was referenced during deliberations. Finally, L.C. testified that she was the hold-out juror, the last to change her vote from "not guilty" to "guilty," and said that she changed her vote (even though she believed appellant was not guilty) because the pressure she felt was "overwhelming to [her]" and "they were all waiting for me." On cross-examination, L.C. conceded that she did ultimately vote to find appellant guilty and that she sat silent when the verdict was announced in open court, not contradicting it.

3

The State objected to the content of L.C.'s testimony multiple times throughout her testimony based on Rule of Evidence 606(b). After L.C. testified, the State maintained that the evidence presented by appellant simply demonstrated "buyer's remorse," and reasserted that none of the evidence related to an improper outside influence and was, therefore, inadmissible juror testimony. *See Colyer v. State*, 428 S.W.3d 117, 124 (Tex. Crim. App. 2014) ("The most common, but disallowed, means to impeach the jury's verdict is the 'disgruntled juror.'"). The trial court denied the motion for new trial without comment. In his first point of error, appellant argues that the trial court abused its discretion in denying his motion.

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Colyer*, 428 S.W.3d at 122; *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). In conducting our review, we may not substitute our judgment for that of the trial court; rather, we decide only whether the trial court's decision was arbitrary or unreasonable. *Colyer*, 428 S.W.3d at 122; *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Colyer*, 428 S.W.3d at 122; *Holden*, 201 S.W.3d at 763.

A motion for new trial alleging jury misconduct must be supported by the affidavit of a juror or other person who is in a position to know the facts. *Trout v. State*, 702 S.W.2d 618, 620 (Tex. Crim. App. 1985); *see Castillo v. State*, 319 S.W.3d 966, 970 (Tex. App.—Austin 2010, pet. ref'd). Under Rule of Evidence 606(b), however, a juror may only testify regarding outside influences improperly brought to bear upon a juror or to rebut a claim the juror was not qualified to serve. Tex. R. Evid. 606(b). A juror may not testify about matters occurring during juror

deliberations, or to the effect of anything on any juror's mind, emotions, or mental processes. *Id.*; *McQuarrie v. State*, 380 S.W.3d 145, 154 (Tex. Crim. App. 2012). "Thus, a juror is not permitted to testify about any events or statements occurring during jury deliberations, any of the jurors' mental processes, or how an improper outside influence *actually* affected the jurors."[2] *Colyer*, 428 S.W.3d at 123 (emphasis added).

Here, L.E.'s affidavit and L.C.'s testimony at the hearing were composed solely of impermissible juror testimony. Neither the affidavit nor the in-court testimony established the requisite outside influence to support a claim of juror misconduct. All of the events, statements, and processes described in the affidavit and testimony emanated from inside the jury. "[A]n 'outside influence' is 'something originating from a source outside of the jury room and other than from the jurors themselves.'" *Colyer*, 428 S.W.3d at 125 (quoting *McQuarrie*, 380 S.W.3d at 154). The outside-influence exception does not include influences such as coercion by a fellow juror or the discussion of a juror's own personal knowledge. *Id.* The affidavit and testimony offered by appellant relate exclusively to events and conversations that took place in the jury room and among the jurors themselves, to how individual jurors felt "pressured" or believed other jurors felt pressured, and to the jurors' personal understanding (or misunderstanding) of the deliberations process and the court's instructions. They do not allege the exertion of any "outside influence" as

---

[2] Testimony about the existence of an outside influence would be permissible under the rule. *See* Tex. R. Evid. 606b) ("[A] juror may testify whether any outside influence was improperly brought to bear upon any juror."). However, testimony about the particular effect such an outside influence had on any particular juror is improper. *See Colyer v. State*, 428 S.W.3d 117, 129-30 (Tex. Crim. App. 2014) ("Courts use the objective 'reasonable person' test to decide what effect the particular 'outside influence' in a case would have on the hypothetical average juror. We do not allow testimony about the effect had upon [a] particular juror." (footnotes omitted)).

interpreted by the Texas Court of Criminal Appeals. Consequently, L.E.'s affidavit and L.C.'s testimony were inadmissible under Rule 606(b). *See* Tex. R. Evid. 606(b) ("Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes."); *Colyer*, 428 S.W.3d at 125 ("Except for (1) an 'outside influence' as defined in *McQuarrie* that is (2) 'improperly brought to bear' upon a juror, Rule 606(b) continues to prohibit juror testimony to impeach a verdict.").

Because appellant did not offer any competent evidence in support of his argument that juror misconduct occurred, we cannot say that the trial court's decision to deny the motion for new trial was arbitrary or unreasonable. Accordingly, we overrule appellant's first point of error.

## Sufficiency of the Evidence

In his second point of error, appellant challenges the sufficiency of the evidence to support his conviction for continuous sexual abuse of a young child.

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014). When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Rabb*, 434 S.W.3d at 615; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*,

443 U.S. at 318; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider only whether the jury reached a rational decision. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) ("Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally." (quoting *Laster*, 275 S.W.3d at 518)).

As exclusive judge of the facts, the jury is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see* Tex. Code Crim. Proc. arts. 36.13, 38.04. The jury is also free to accept or reject any or all of the evidence presented by either side. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Thus, when the record supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013).

A person commits the offense of continuous sexual abuse of a young child if (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age. Tex. Penal Code § 21.02(b). An "act of sexual abuse" is an act that violates one or more specified penal laws, including section 22.021, entitled "Aggravated Sexual Assault." *Id.* § 21.02(c)(4). A person commits the offense of aggravated sexual assault if the person intentionally or knowingly

- causes the penetration of the anus or sexual organ of a child by any means;

- causes the penetration of the mouth of a child by the sexual organ of the actor;

7

- causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

- causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor;

- causes the mouth of a child to contact the anus or sexual organ of another person, including the actor;

- and the child is under 14 years of age.

*Id.* § 22.021(a)(1)(B)(i)-(v), (2)(B). In this case, the indictment alleged that on more than one occasion during a period of 30 days or more between January 6, 2009 and January 31, 2010, appellant intentionally or knowingly (1) penetrated J.W.'s sexual organ with his penis, (2) caused J.W.'s sexual organ to contact his penis, (3) penetrated J.W.'s mouth with his penis, and (4) caused J.W.'s sexual organ to contact his mouth. The indictment also alleged that during these acts appellant was 17 years of age or older and J.W. was a child younger than 14 years of age.

J.W. was 11 years old at the time of trial. She testified that appellant—whom she called "Daddy" because he married her mother when she was very young and was the only father she knew—"raped [her]" when she was eight. She explained that appellant would wake her up at night when she was asleep in her room and "put his private in [her] privates," which hurt. She clarified that by his "private" she was referring to appellant's penis and her "private" was her vagina. When asked how many times this happened, J.W. said, "A lot." She said that when appellant would do this, he "would get stuff on her" that came from his private that she had to wash off. J.W. also testified that appellant "put his private in [her] mouth," which made her feel "uncomfortable," and asked her "to suck" it. She said that appellant showed her "nasty pictures" of "other people's

8

privates" (privates touching privates) on his phone.[3] J.W. testified that on one of the occasions when appellant put his private in her private, her mother walked into her room and saw them. She said that after that, appellant stopped "for a long time" but started again after her birthday on January 6th. Thus, J.W. described multiple instances in which appellant committed acts of sexual abuse as alleged in the indictment. *See* Tex. Penal Code §§ 21.02(b); 22.021(a)(1)(B). She provided specific facts and sensory details when testifying about what happened, where it happened, and (in general terms) when it happened. Arguably, because J.W. was under 17 years of age at the time of the incidents, her testimony alone is sufficient to support appellant's conviction for continuous sexual abuse of a young child. *See* Tex. Code Crim. Proc. art. 38.07(a), (b)(1); *Martinez v. State*, No. 10-14-00035-CR, 2014 WL 5094104, at *3 (Tex. App.—Waco Oct. 9, 2014, pet. filed) (mem. op., not designated for publication) ("The testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child."); *see also Williams v. State*, 305 S.W.3d 886, 890 n.7 (Tex. App.—Texarkana 2010, no pet.) (finding evidence to be legally sufficient to support finding that two or more acts of sexual abuse occurred over span of 30 days or more when child said she was abused "more than once," and noting that child victim's inability to articulate exact dates of abuse is precisely situation legislature considered when it enacted section 21.02 of Texas Penal Code). However, other evidence at trial combined with J.W.'s testimony to support the jury's verdict of guilt.

---

[3] Evidence at trial showed that a computer forensics examination of appellant's cell phone revealed portions of a deleted pornographic video of two adults engaging in sexual intercourse that was on the phone in November 2009. The analyst testified that when paused the video depicts an image that appears on the phone as a picture.

J.W. told the sexual assault nurse examiner (SANE) who examined her that appellant had "touched [J.W.] in a place where [she's] not supposed to be touched." The nurse testified that J.W. explained that appellant put his private inside her privates more than once. The nurse also testified that J.W. described appellant ejaculating, and told her that appellant showed her pictures on his phone.

The forensic interviewer from the children's advocacy center testified as the outcry witness. *See* Tex. Code Crim. Proc. art. 38.072. She said that J.W. was "very, very emotional" as she described appellant "touching her in the wrong places." The interviewer testified that J.W. identified private places on a body drawing, and said that when she was eight appellant put his private (which he called his "dick") in her privates (which appellant called her "pussy"). J.W. told the interviewer that this happened "a lot of times." She disclosed that appellant asked her to "rub his balls" while he put his private in her private, and talked about appellant "using his tongue on her pussy." She also told the forensic interviewer that her mother saw it happen one morning. In addition, during the interview J.W. gave a demonstration of appellant's hand actions on his private when he was putting it in her privates, mimicking appellant masturbating. J.W. also reported that appellant had shown her pictures on his phone "of adult men and women where she could see their privates." The interviewer testified that J.W. said that the abuse stopped for five weeks but then started back up, and that the last time was in January 2010.

J.W.'s mother, J.S., also testified at trial. She described the occasion when she walked into J.W.'s room one morning and saw appellant with her daughter. She testified that her daughter was lying on her bed wearing only her pajama top with her legs bent over the side of the

10

mattress (but her feet did not reach the ground because she was not tall enough). Appellant was standing naked between J.W.'s legs with his underwear down around his ankles. J.S. said that appellant "had his hand holding his penis and it was erected [sic] and he was rubbing it up and down in between her — her — her privates." She testified that this incident happened on October 14, 2009 and that J.W. was eight years old. J.S. also said that when she caught appellant in this compromising position with her daughter, he pulled up his underwear and left the room. As he passed her, he threw his hands up in the air and said, "You caught me. And I'm glad you caught me, and it's over with." According to J.S., during the conversation that followed, appellant admitted that he began sexually abusing J.W. in January 2009. He admitted to her that "he had put it in her mouth and that he had ejaculated on her and that he had just rubbed it on her."

Although J.W. was not able to provide exact dates during her testimony of when appellant put his private in her privates or when appellant put his private in her mouth, based on her mother's testimony about the date she discovered appellant with her daughter (October 14, 2009) and J.W.'s testimony at trial (and statements to the forensic interviewer) that the abuse stopped after the incident her mother witnessed but resumed after her birthday (January 6, 2010), the jury could have reasonably concluded that appellant perpetrated two or more acts of sexual abuse against J.W. over a span of 30 days or more. Viewing the evidence summarized above in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the essential elements of this offense beyond a reasonable doubt.

In his brief, appellant reiterates the defense at trial that J.W. "was tampered with" by her mother, and cites to evidence at trial concerning possible motives of J.S. for falsely accusing

11

appellant, including her mental-health issues, her infidelity in her marriage to appellant, and her desire to "hurt" appellant and have leverage to maintain custody of their children in the divorce.[4] However, as noted previously, the jury, as exclusive judge of the facts, was free to reject any or all of the evidence presented by the defense. *See Lancon*, 253 S.W.3d at 707; *Wesbrook*, 29 S.W.3d at 111; *see also* Tex. Code Crim. Proc. arts. 36.13, 38.04. When the record supports conflicting inferences, as it does here, we must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that resolution. *See Jackson*, 443 U.S. at 326; *Anderson*, 416 S.W.3d at 888. Accordingly, we presume that the jury rejected appellant's manipulation defense.

Also in his brief, appellant suggests that the evidence is insufficient to support his conviction for sexually abusing J.W. because the record demonstrates that "the state had failed to meet its burden of proof as to at least two jurors at trial," referring to the affidavit and testimony of two jurors that appellant relied on to prove juror misconduct as alleged in his motion for new trial. *See* discussion *supra* at 2-3. Appellant's contention is without merit. The sufficiency of the evidence to support a conviction is not dependent on, or related to, how individual jurors feel about their guilty verdict after the fact. Evidence is sufficient to support a conviction when, based on the evidence and reasonable inferences therefrom, any rational fact-finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Anderson*, 416 S.W.3d at 888. As we have concluded, based on the evidence presented at trial, a rational trier of fact could have found that appellant committed two or more acts of sexual abuse against his stepdaughter over

---

[4] The record reflects that in addition to J.W. and her sister, who were not appellant's biological daughters, appellant and J.S. had two sons together.

a span of 30 or more days.  Therefore, the evidence is sufficient to support appellant's conviction.

We overrule appellant's second point of error.

## CONCLUSION

Finding no abuse of discretion in the trial court's denial of appellant's motion for new trial, and finding the evidence sufficient to support his conviction for continuous sexual abuse of a young child, we affirm the trial court's judgment of conviction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   December 23, 2014

Do Not Publish

13