# NO. 12-17-00390-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *AMANDA RAQUEL MITCHELL, APPELLANT* | § | *APPEAL FROM THE 173RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Amanda Raquel Mitchell appeals her conviction for abandoning or endangering a child. In five issues, Appellant argues that the State violated the Michael Morton Act[1] and her due process rights under ***Brady v. Maryland***[2] and that the trial court erred by denying her motions for an instructed verdict, a mistrial, and a new trial. We affirm.

## BACKGROUND

Appellant was charged by indictment with abandoning or endangering a child by failing to protect him and failing to provide medical attention to his injuries. She pleaded "not guilty," and the matter proceeded to a jury trial.

At trial, the evidence showed that Appellant lived with Guy Ramey, his son, and Appellant's three children. One day, a preschool teacher noticed bruising on Appellant's youngest son, three-year-old K.M. The preschool director notified the Texas Department of Family and Protective Services (the Department). K.M. said that Ramey caused the bruising. Ramey pleaded "guilty" to the offense of injury to a child.

---

[1] TEX. CODE CRIM. PROC. ANN. art. 39.14(h), (k) (West Supp. 2018); *see **Francis v. State***, 428 S.W.3d 850, 856 n.12 (Tex. Crim. App. 2014).

[2] 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

Appellant testified that she did not know Ramey was abusing K.M. She claimed that she bathed K.M. the night before the bruises were discovered but did not notice them.

Ultimately, the jury found Appellant "guilty" of abandoning or endangering a child. The trial court assessed Appellant's punishment at confinement for two years in a state jail facility, but suspended the sentence and placed her on community supervision for five years. This appeal followed.

**DISCLOSURE OF EVIDENCE**

In Appellant's first issue, she argues that the State violated her due process right to the disclosure of favorable evidence under *Brady*. In her second issue, she argues that the same nondisclosure violated the Michael Morton Act.

**Preservation of Error**

Preservation of error is a systemic requirement on appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010). It is the duty of the appellate courts to ensure that a claim is preserved in the trial court before addressing its merits. *Id.* In general, a claim is preserved for appellate review only if (1) the complaint was made to the trial court by a timely and specific request, objection, or motion and (2) the trial court either ruled on the request, objection, or motion or refused to rule and the complaining party objected to that refusal. TEX. R. APP. P. 33.1(a); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). If a party fails properly to object to errors at trial, even constitutional errors can be forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

**Analysis**

Department Investigator Janira Sanchez testified that K.M. underwent a medical evaluation at a local hospital, and the results of the evaluation indicated new and old bruising. Cayce Hampton Bosher[3] testified that, at the time of these events, she was the lead investigator of crimes against children for the Henderson County Sheriff's Office. She reviewed documentation of the medical assessment. In the documentation, the doctor noted that K.M. had multiple injuries in various stages of healing, which indicated that the abuse was ongoing.

---

[3] The record indicates that the investigator's name was Cayce Hampton at the time of these events and Cayce Bosher at the time of trial.

After these two witnesses testified, Appellant complained to the trial court that the State did not provide her K.M.'s medical records. Appellant averred that the records might contain exculpatory information, such as documentation of a recent, prior doctor visit. Appellant then requested access to the records. The State responded that it notified Appellant of the existence of the records but did not provide access to her through its discovery sharing system because of HIPAA and other privacy concerns. The State maintained that it was Appellant's responsibility to make a request to view the records. The trial court granted Appellant access to the records and time to review them privately with her attorney. Appellant made no further objection concerning the medical records.

On appeal, Appellant argues that she is entitled to a new trial because the medical records contain "a treasure trove of valuable evidence[,] . . . some of which arguably [is] exculpatory." We disagree. Appellant has not preserved her ***Brady*** and Michael Morton Act complaints for our review. Although Appellant asserted to the trial court before she saw the medical records that they might contain exculpatory evidence, she did not assert that they contained such evidence after she reviewed them. Nor did she make a motion for continuance to the trial court. When previously withheld evidence is disclosed at trial, a defendant's failure to request a continuance waives any ***Brady*** violation. ***Young v. State***, 183 S.W.3d 699, 706 (Tex. App.—Tyler 2005, pet. ref'd). Because Appellant did not object or request a continuance after viewing the records, we conclude that any violation based on the State's alleged nondisclosure of them is forfeited. *See **id.***; TEX. R. APP. P. 33.1(a); ***Clark***, 365 S.W.3d at 339. Accordingly, we overrule Appellant's first and second issues.

## MOTION FOR INSTRUCTED VERDICT

In Appellant's third issue, she argues that the trial court erred by denying her motion for an instructed verdict because the State did not offer evidence to show she did not provide medical attention, nor did it offer evidence to negate the exception to the offense.

## Standard of Review and Applicable Law

A challenge to a trial court's ruling on a motion for an instructed verdict is a challenge to the sufficiency of the evidence to support the conviction. ***Madden v. State***, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990). In Texas, the ***Jackson v. Virginia***[4] standard is the only standard that a

---

[4] 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. **Brooks v. State**, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under the **Jackson** standard, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt. **Jackson**, 443 U.S. at 319, 99 S. Ct. at 2789. The responsibility of the trier of fact is to resolve conflicts in the testimony fairly, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See id*. The jury is the exclusive judge of the credibility of witnesses and the weight to be given their testimony. **Wyatt v. State**, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Id*. Because the jury is the sole judge of a witness's credibility and the weight to be given the testimony, it may choose to believe some testimony and disbelieve other testimony. **Lancon v. State**, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

To satisfy the elements of abandoning or endangering a child as alleged in the indictment, the State was required to prove that Appellant intentionally, knowingly, recklessly, or with criminal negligence engaged in conduct by omission that placed K.M., a child under fifteen years old, in imminent danger of death, bodily injury, or physical or mental impairment by failing to protect K.M. from Ramey or failing to provide medical attention to K.M.'s injuries caused by Ramey, and that she did not voluntarily deliver K.M. to a designated emergency infant care provider under Section 262.302 of the Texas Family Code. *See* TEX. PENAL CODE ANN. § 22.041(c), (h) (West 2011).

**Analysis**

At trial, K.M.'s seven-year-old sister, C.C., testified that the children in the house were spanked, twice by Appellant and most often by Ramey. She further testified that they were spanked multiple times on multiple days. According to C.C., Ramey used a long wooden paddle to spank the children. Sometimes Appellant left the room during the spankings, and sometimes she watched. But she never did anything to stop the spankings. One day, after one of the children threw mud in Appellant's hair, Appellant drilled holes in the paddle to make it move faster.

Heather Smith testified that she was a teacher at Kiddie Kampus, the preschool K.M. attended. On April 20, 2016, when K.M. arose from the toilet and turned to flush, Smith saw that he was severely bruised from his lower back to his knees. K.M. told Smith that "Guy" was

4

responsible for the bruises. Appellant brought K.M. to preschool that day and did not mention any injuries.

Investigator Sanchez testified that she received a phone call concerning K.M. from the Kiddie Kampus director and began an investigation. As a result, the Department determined that exigent circumstances existed for the removal of K.M., C.C., their four-year-old brother,[5] and Ramey's son, twelve-year-old C.R. Sanchez and others from the Department and law enforcement went to the home to get C.C. and C.R. after they came home from school. When Appellant and Ramey arrived at the home, Sanchez apprised them of the situation and requested that they pack some things for the children. Appellant and Ramey then went inside with C.C. and C.R. Sanchez and the others waited outside for around fifteen minutes before Appellant came out asking where C.C. and C.R. were. Investigator Hampton went behind the house into some tall grass and found the children. According to Sanchez, based on her experience and the results of a medical evaluation, she believed that the bruises on K.M.'s body were both new and old and were consistent with the children's accounts of what occurred.

Bosher testified that she conducted interviews with Appellant and Ramey after they were arrested on April 22. Video recordings of the interviews were admitted into evidence. When Appellant was brought into the interview room, she started crying almost immediately and cried through most of the twenty-minute interview, although there is little sign of her tears in the video. When Bosher asked Appellant about the last time she looked at K.M.'s bottom, she answered that she gave him a bath the night of April 19, washed his whole body, and did not see anything. Bosher then showed Appellant a photograph of K.M.'s injuries. Appellant covered her face and repeated the phrases "Oh my God!" and "Oh my baby!" several times before responding to any more of Bosher's questions. When Appellant finally appeared to calm down, Bosher told her that her children said Ramey caused the injuries and that they called him "the paddle man." Appellant responded, "Did you ever find a paddle?"

After the State rested its case, Appellant moved for an instructed verdict, arguing that the State did not offer evidence to negate the exception to the offense, namely, that "the defendant did not voluntarily deliver the child to a designated emergency infant care provider under Section 262.302 of the Texas Family Code." *See id.* § 22.041(h). The trial court overruled Appellant's motion.

---

[5] K.M.'s brother's initials are also K.M. He attended preschool at Kiddie Kampus as well.

In her defense, Appellant testified that she is not guilty of the charge against her. She claimed that she did not know there was a paddle in her house, had no idea how K.M. was injured, and was unaware of the injuries at that time. Appellant stated, "If I would have saw that on my child, there's no way I would have sat around and watched it. There was no way I would have let my kids suffer like I have in the past." She claimed she "made a mistake by not paying enough attention to [her] . . . everyday surroundings." Appellant confirmed that she gave K.M. a bath on April 19 but claimed she did not see the injuries. She explained,

> I don't know if it was because of my arm[.][6] I just wasn't functioning right or what[.] [B]ut I did not see nothing on my kids or I would have took them in. . . . I would have took them to the hospital like I did whenever my kids ever got hurt or sick.

On appeal, Appellant argues that the State was required to prove "each of the conjunctive elements alleged in the indictment." She contends that the evidence is insufficient to sustain her conviction because none of the State's witnesses supplied any evidence that she "failed to provide proper care to her child under the Texas Family Code Section 262.302." In support of her argument, Appellant lists the State's witnesses and observes that each of them "did not testify as to whether Appellant sought or provided medical treatment to [K.M.]." We liberally construe Appellant's arguments as challenging both the allegation that she did not provide medical attention to K.M.'s injuries and the allegation that she did not deliver K.M. to an emergency infant care provider under Section 262.302 of the family code. But even under this liberal construction, we cannot grant Appellant relief.

First, the evidence is sufficient to show that Appellant did not deliver K.M. to an emergency infant care provider under Section 262.302. That section provides the following:

> A designated emergency infant care provider shall, without a court order, take possession of a child who appears to be 60 days old or younger if the child is voluntarily delivered to the provider by the child's parent and the parent did not express an intent to return for the child.

TEX. FAM. CODE ANN. § 262.302(a) (West 2014). Delivery of a child under that section is a statutory exception to the offense of abandoning or endangering a child. *See* TEX. PENAL CODE ANN. § 22.041(h). Therefore, the State was required to "negate the existence of [the] exception in

---

[6] Evidence showed that Appellant was recovering from a fractured arm at the time.

the accusation charging commission of the offense and prove beyond a reasonable doubt that [Appellant] or [Appellant's] conduct does not fall within the exception." *See* TEX. PENAL CODE ANN. § 2.02(b) (West 2011). Smith testified that when she discovered K.M.'s injuries, he had recently turned three years old. Appellant testified that K.M. was born on January 4, 2013. This evidence, as well as a photograph of K.M. taken on the day his injuries were discovered, is sufficient to prove that he did not appear to be sixty days old or younger. Thus, Appellant could not have delivered him to an emergency infant care provider under Section 262.302.

Second, the evidence is sufficient to prove that Appellant failed to provide medical attention to K.M.'s injuries. In Appellant's videotaped interview, she acted shocked when Bosher showed her the pictures of K.M.'s injuries. At trial, she testified that she had no idea that K.M. was injured and that if she had known, she would have taken him to the hospital.[7] The jury could have reasonably inferred from this evidence that Appellant did not provide medical attention to K.M.'s injuries. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the jury rationally was justified in finding beyond a reasonable doubt that Appellant is guilty of abandoning or endangering a child. *See id.*; *Brooks*, 323 S.W.3d at 899; *see also* TEX. PENAL CODE ANN. § 22.041. Accordingly, we overrule Appellant's third issue.

## JUROR MISCONDUCT

In her fourth issue, Appellant complains that the trial court erred by denying her motion for mistrial after a juror stated he decided to convict after making an observation at home the night before the verdict. In her fifth issue, she argues that the trial court erred by denying her motion for new trial based on the same alleged juror misconduct.

**Standard of Review and Applicable Law**

A trial court's denial of a mistrial is reviewed under an abuse of discretion standard, and its ruling must be upheld if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). We review a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if the trial judge's opinion was clearly erroneous

---

[7] In her brief, Appellant implies that we only must consider evidence elicited by the State in its case in chief. However, when reviewing a trial court's ruling on a motion for an instructed verdict, we consider all the evidence. *Madden*, 799 S.W.2d at 686 & n.3.

7

and arbitrary. **Riley v. State**, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012); **Holden v. State**, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006).

A defendant must be granted a new trial when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial. TEX. R. APP. P. 21.3(g). However, during an inquiry into the validity of a verdict, a juror may not testify about any statement made or incident that occurred during deliberations, the effect of anything on any juror's vote, or any juror's mental processes concerning the verdict. TEX. R. EVID. 606(b)(1). A trial court may not receive a juror's affidavit or evidence of a juror's statement regarding these matters. **Id.** An exception to this rule is that a juror may testify about whether an outside influence improperly was brought to bear on any juror. *See **id.*** 606(b)(2).

A defendant may preserve jury misconduct error by a motion for new trial or, if the misconduct is exposed during trial, by a motion for mistrial. **Camacho v. State**, 864 S.W.2d 524, 530 (Tex. Crim. App. 1993). Generally, a motion for new trial alleging jury misconduct must be supported by the affidavit of a juror or some other person who was in a position to know the facts. **Trout v. State**, 702 S.W.2d 618, 620 (Tex. Crim. App. 1985). Otherwise, the motion must state a reason for the omission of the affidavit. **Id.**

<u>Analysis</u>

After the jury returned its verdict, Appellant filed a motion for mistrial alleging that the prosecutor and defense counsel spoke with several jurors, and one juror stated that

> the turning point for him that caused him to find [Appellant] "guilty" was when the *night before* the verdict was rendered, he was bathing his young son. During the process of bathing his son, he contemplated whether [Appellant] could not have noticed that her son's buttocks were bruised. [The juror] stated that he concluded that there was no way, based on his experience bathing his son the night before the verdict was rendered, that [Appellant] could not have known that her son had bruises on his buttocks[.]

Appellant argued that the juror's actions violated the following instruction of the trial court:

> During your deliberations in this case, you must not consider, discuss, nor relate any matters not in evidence before you. You should not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case, which is not shown by the evidence.

Appellant further argued that the juror's actions constituted an improper outside influence on him and "likely" other jurors as well. She contended that because of the juror's misconduct, she was deprived of a fair and impartial jury. The trial court denied the motion.

In the motion for mistrial, her ensuing motion for new trial, and on appeal, Appellant supports her argument that the juror was exposed to an improper outside influence by comparing his actions to those of a juror in *McQuarrie v. State*. 380 S.W.3d 145 (Tex. Crim. App. 2012). In *McQuarrie*, the defendant in a sexual assault case moved for a new trial based on evidence that a juror researched the effects of date rape drugs on the internet during an overnight recess in deliberations. *Id.* at 148. At a hearing on the motion, the defendant offered as evidence the affidavits of two other jurors. *Id.* The trial court determined that the affidavits did not show an outside influence and refused to consider them pursuant to Rule 606(b). *Id.* The court of appeals agreed, but the court of criminal appeals held that the internet research constituted an outside influence and remanded the case for a new hearing on the motion. *Id.* at 155.

Although the juror's actions here, like the juror's actions in *McQuarrie*, occurred at home during an overnight recess in deliberations, we cannot agree with Appellant that they likewise constitute an "outside influence." An outside influence must come from outside the jury and its deliberations, but not everything that comes from outside the jury room qualifies as an outside influence for the purposes of Rule 606(b). *Colyer v. State*, 428 S.W.3d 117, 127 (Tex. Crim. App. 2014). The court of criminal appeals interprets "outside influence" to mean "something originating from a source outside of the jury room and other than from the jurors themselves." *McQuarrie*, 380 S.W.3d at 154. A Rule 606(b) inquiry is limited to that which occurs outside of the jury room and outside of the juror's personal knowledge and experience. *Id.* at 153.

Here, the juror stated that while bathing his son, he observed that it would be impossible to do so without seeing bruises like K.M.'s. This observation is within the juror's personal knowledge and experience. Therefore, we conclude that the trial court reasonably could have found that the juror's observation was not an outside influence. *See id.* at 153–54; TEX. R. EVID. 606(b).

Furthermore, a juror may testify about an outside influence only when it was "improperly brought to bear" with an intent to influence a juror. *See* TEX. R. EVID. 606(b)(2)(A); *Colyer*, 428 S.W.3d at 128–29. For example, the juror who researched date rape drugs in *McQuarrie* told other jurors about her finding in an effort to affect the verdict. *Colyer*, 428 S.W.3d at 129 (citing

9

*McQuarrie*, 380 S.W.3d at 148). In this case, there is no evidence that the juror bathed his son in an effort to affect the verdict. Nor is there any evidence that he told any other jurors about bathing his son in an effort to affect the verdict. Therefore, the trial court reasonably could have found that the outside influence, if any, was not improperly brought to bear on any juror. *See Colyer*, 428 S.W.3d at 128–29; *see also* TEX. R. EVID. 606(b)(2)(A).

Finally, even had the trial court found that the juror was exposed to an improper outside influence, the juror still would be prohibited from testifying about the influence's effect on him. *See Colyer*, 428 S.W.3d at 129. Courts use the objective "reasonable person" test to determine whether there is a reasonable possibility that the unauthorized information or communication would have a prejudicial effect on the hypothetical average juror. *See id.*; *McQuarrie*, 380 S.W.3d at 154. In this case, common sense dictates that a person could not bathe K.M. without seeing the extensive bruising depicted in the pictures in evidence. Therefore, the trial court in this case reasonably could have found that the hypothetical average juror would not be improperly influenced to convict based on observing his own child in the bathtub. *See Colyer*, 468 S.W.3d at 129; *McQuarrie*, 380 S.W.3d at 154.

In conclusion, the trial court properly could have denied Appellant's motion for mistrial by deciding that no outside influence was shown, any outside influence was not improperly brought to bear on a juror, or the hypothetical average juror would not be improperly influenced by the information. *See* TEX. R. EVID. 606(b); *Colyer*, 428 S.W.3d at 129; *McQuarrie*, 380 S.W.3d at 153–54; *Coble*, 330 S.W.3d at 292. Accordingly, we overrule Appellant's fourth issue.

For the same reasons, the trial court did not abuse its discretion by denying Appellant's motion for new trial. *See* TEX. R. EVID. 606(b); *Colyer*, 428 S.W.3d at 129; *McQuarrie*, 380 S.W.3d at 153–54; *see also Riley*, 378 S.W.3d at 457; *Holden*, 201 S.W.3d at 763. Additionally, the motion was not supported by an affidavit of a juror or some other person who was in a position to know the facts, nor does it state a reason for the omission of the affidavit. *See Trout*, 702 S.W.2d at 620. Consequently, the motion for new trial should not have been entertained by the trial court and is not properly preserved for appeal. *See id.* Accordingly, we overrule Appellant's fifth issue.

10

## DISPOSITION

Having overruled Appellant's first, second, third, fourth, and fifth issues, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered November 5, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 5, 2018**

**NO. 12-17-00390-CR**

**AMANDA RAQUEL MITCHELL,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 173rd District Court

of Henderson County, Texas (Tr.Ct.No. CR16-0565-173)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed,** and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*