**AFFIRMED; Opinion Filed December 18, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-01104-CR

**DAVID LANE CHRISTOFFEL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

On Appeal from the 354th Judicial District Court
Hunt County, Texas
Trial Court Cause No. 31,348

# MEMORANDUM OPINION
Before Justices Myers, Evans, and Brown
Opinion by Justice Evans

David Lane Christoffel was charged by indictment with sexual assault. The jury convicted appellant of the offense as alleged in the indictment and assessed punishment at eight years' imprisonment. On appeal, appellant contends that the trial court erred in denying his motion for new trial based on two separate grounds – ineffective assistance of counsel and newly discovered evidence. We affirm the conviction.

## BACKGROUND

**Evidence at Trial.**

The indictment alleged that appellant sexually assaulted M.K.[1] on or about July 4, 2014. In the summer of 2014, M.K. was fifteen years old and going into her sophomore year of high

---

[1] In the indictment, the pseudonym "Jane Doe – 1508530" was used to designate the complainant.

school. Her circle of close friends included her best friend Chad Cline, and appellant. The three of them would ride four-wheelers together. Prior to the July 4th weekend, M.K. never spent any time with appellant apart from her group of friends.

On July 4th, M.K.'s family got together for a cookout at her cousin's house near Club Lake. After the cookout, they went to Club Lake and watched the fireworks show. Appellant lived near her cousin. While they were watching the fireworks, M.K. saw appellant drive by in his truck and texted him to come say "Hi" to her. M.K. and appellant made plans to hang out together later that evening. M.K. testified appellant picked her up sometime around midnight and while they were driving around and talking, appellant stopped the truck on a dirt road, ordered her into the back seat, forcefully took her clothes off, and sexually assaulted her. Throughout the assault, M.K. hit appellant and screamed "No, no, no". After the assault was over, appellant took M.K. home. M.K. remembered looking back in the truck and seeing the backseat covered in blood. M.K. did not tell anyone about the assault until the fall of 2015 when she confided that she had been raped and abused by a guy in a text to her friend, Seth Stevens. M.K. told her parents about the assault in October 2015 after her mother discovered the text to Seth on M.K.'s phone while M.K. was away on a trip. The assault was then reported to the police. M.K. was interviewed at the Children's Advocacy Center and later given a sexual assault examination.

Chad Cline testified he was best friends with M.K. and had known her family all of his life. He also knew appellant and hung out with him a lot. It was Cline who introduced M.K. to appellant. Cline testified M.K. and appellant never hung out together without Cline being with them; for the most part, their activities together included riding four-wheelers and occasionally going to dinner or lunch. Cline noticed that appellant acted flirtatious around M.K. but that M.K. did not respond in kind; Cline never saw anything happen between them such as kissing or holding hands. Cline testified he was not around either M.K. or appellant the weekend of July 4th but did

meet appellant a week later for lunch at Buffalo Grill. During their conversations at lunch, appellant told Cline that he had sex with M.K. and that he felt like it was very forceful and he hurt her. Appellant also told Cline he made M.K. bleed in the backseat of his truck and that M.K. kept hitting him and telling him "No, no, no, please stop" but he just kept doing it. Cline did not talk to M.K. about what he had learned from appellant until a few weeks later when he noticed a change in her behavior and that she had become very quiet and reserved. After appellant told Cline about the incident with M.K., he no longer hung out with appellant.

Kim Basinger testified she did a sexual assault examination on M.K on December 2, 2015. The history M.K. gave Basinger about the assault was similar to M.K.'s description of the assault at trial. During the examination, Basinger found evidence of a large tear on M.K.'s hymen which was consistent with all the blood in the truck and the pain M.K. described during the assault.

Appellant testified at trial and presented a different version of what happened between him and M.K. Appellant testified that from the morning of July 4, 2014 to the morning of July 6, 2014, he was out of town hanging out with his aunt, uncle and cousins at his uncle's ranch in Morgan Mills. No one else from his family in Greenville went with him to Morgan Mills that weekend. Appellant admitted to having sex with M.K. but stated that it was consensual and that it happened either on a Friday or Saturday night in February or March 2014. Appellant testified he and M.K. had a little crush on each other and had been talking for several weeks about getting together and having sex. On the night in question, appellant picked M.K. up in his truck around 12:00 or 1:00 a.m. and they parked at the end of a dead-end road near a creek where they used to drive four-wheelers. They started kissing which led to them getting in the back seat and eventually having sex. Appellant described it as "a very nice, loving event." He testified that he did not force M.K. to have sex and that she never hit him or told him to stop. Appellant admitted to meeting Cline at

Buffalo Grill sometime in the summer of 2014 but stated they only met in the parking lot to drive each other's new car and did not talk about M.K. or go inside to eat.

**Evidence at Motion for New Trial Hearing.**

Following appellant's conviction, a motion for new trial was filed alleging that appellant received ineffective assistance of counsel and that there was newly discovered evidence material to his conviction. Several witnesses testified during the hearing on the motion:

Jordan Saenz testified she knew M.K. from junior high and high school and they were good friends throughout school. She knew appellant through mutual friends. Saenz testified that in the summer of 2014, she was with her boyfriend, David Weaks, and they rode four-wheelers to M.K.'s house. While they were there, M.K. told her about a sexual encounter with appellant where appellant picked her up in his truck, they parked somewhere, had sex, and she bled afterwards because it was her first time. Saenz testified when M.K. told her about the incident, M.K. did not say anything about whether or not appellant forced her to have sex or give her any indication that it was not something she wanted to do. Saenz testified, "I thought it was consensual from how she was talking about it…." She testified M.K. never specifically stated that she consented to have sex with appellant, "It just seemed that way." Saenz also testified she never told appellant about the conversation and did not tell anyone else about it until she received a phone call from appellant's attorney on appeal. Saenz testified she was reminded of the conversation when Weaks called her to talk about it after appellant had been convicted.

David Weaks testified he knew M.K. because she was friends with Saenz while they were dating. He only met appellant once. Weaks testified he and Saenz were at M.K.'s house and in her driveway when M.K. told them that she had sex with appellant in his truck. Weaks could not remember what kind of truck or any details about the conversation, just that it appeared to him that M.K. was agreeable to having sex with appellant. Weaks testified M.K. did not say anything that

–4–

made him think that she had been forced to have sex with appellant. He conceded that M.K. never specifically stated that she consented to have sex with appellant; that was just his interpretation. Weaks also testified he did not tell anyone about the conversation until he learned about appellant's conviction from his father's friend at a cookout. Appellant's friend, Jason Ross, was also at the cookout and heard Weaks tell his father and friend about the conversation M.K. had with him about the sexual encounter with appellant. Ross then told appellant's sister, Emily, who passed it on to her mother.

Thorne Pickens testified he had known M.K. all of his life; they never dated and were just good friends. Pickens knew of appellant in high school and became extremely close friends with appellant after M.K. accused appellant of sexually assaulting her. Regarding their friendship, Pickens testified "I know he has my back, and I have his, because I don't want anything to happen to him that shouldn't happen. . ." Pickens testified that one day when they were riding four-wheelers together, he asked M.K. if she had ever had sex with anyone. M.K. told him that she had sex with appellant on the way home after a football game. In the conversation M.K. had with Pickens, she told him she climbed over the console into the backseat, one thing led to another, and they ended up having sex. Pickens testified he got the impression it was consensual "from the way she spoke and acted." When he learned of the allegations against appellant, he confronted M.K. at school, asking her why she would do this, but received no response from M.K. Pickens testified that right before the trial he told appellant about the conversation he had with M.K. and told appellant he would be willing to testify on his behalf. Appellant told Pickens he would give his phone number to his lawyer so his lawyer could contact him. Pickens was never contacted by appellant's lawyer. Pickens also testified his family owned an electrical business in downtown Greenville and contact information could easily be found. Pickens admitted that after appellant

was convicted and sentenced to prison, he posted a rude and derogatory statement on Snap Chat directed at M.K.: "To the [woman] that just ruined my buddy's life[,] I hope you burn in hell."

Appellant's sister, Emily, and his mother, Jamie Prince, testified at the hearing about how, after trial, they learned about the conversation Saenz and Weaks had with M.K. Prince also testified that prior to trial, she and appellant knew about the conversation Pickens had with M.K. and she told appellant to tell his lawyer about it. She testified that she never followed up with appellant about Pickens being a potential witness and did not mention him again until after appellant was convicted. Prince also testified when she and appellant met with appellant's attorney, David Couch, prior to trial, they told him appellant was out of town visiting relatives in Morgan Mills the weekend M.K. said appellant sexually assaulted her and could provide photograph evidence and witness testimony. Based on the photographs and promised testimony regarding appellant's whereabouts on that weekend, Couch told them he thought proving appellant was out of town at the time of the assault would be a good defense.

Affidavits from Saenz, Weaks, Pickens, appellant, M.K., and Couch were also admitted into evidence at the hearing on the motion for new trial. In his affidavit, Couch stated that based upon discussions with appellant and his mother regarding the fact that they could prove that appellant was not in Hunt County on the dates alleged by the victim, their best defense would be to show that it was impossible for appellant to have committed the assault as alleged. Couch's affidavit also stated that appellant did not bring up Pickens's name until their third meeting seven months later, and that although he discounted the veracity of the possible testimony unless it could be specifically tied to the date of the alleged assault, he did want to interview Pickens. The affidavit stated Couch told both appellant and his mother to give him Pickens's phone number or have Pickens call him. However, since he did not hear from anyone about the issue again, and

–6–

neither appellant nor his mother provided him with the phone number and Pickens did not call him, he "surmised the statement was gossip, rumor or grapevine talk."

Following arguments from counsel, the trial court denied the motion for new trial and made findings of fact in which it found that neither Pickens, Saenz, nor Weaks were credible witnesses. In its conclusions of law, the trial court found that trial counsel's performance in relation to Pickens as a potential witness did not fall below an objective standard of reasonableness and that there is not a reasonable likelihood that the result of the trial would not have been different had Pickens testified. The trial court also concluded the testimonies of Saenz and Weaks constituted inadmissible hearsay and that even if it was admissible as impeachment evidence at a new trial, it would probably not cause a different result.

## ANALYSIS

In two issues, appellant contends that the trial court erred in denying his motion for new trial. For the reasons that follow, we conclude that the trial court did not abuse its discretion in denying appellant's motion.

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). A trial court abuses its discretion if no reasonable view of the record could support the trial court's ruling. *Colyer*, 428 S.W.3d at 122. We view the evidence in the light most favorable to the trial court's ruling and defer to the trial court's resolution of historical facts. *Id.*; *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Riley v. State*, 378 S.W.3d 453, 456 (Tex.

Crim. App. 2012). We presume that all reasonable factual findings that could have been made against the losing party were made against that losing party. *Colyer*, 428 S.W.3d at 122.

In his first issue, appellant claims that he was entitled to a new trial because he was denied the effective assistance of counsel due to counsel's failure to present the testimony of Thorne Pickens at trial. In his second issue, appellant claims that he was entitled to a new trial based on newly discovered evidence from Jordan Saenz and David Weaks. Both of these legal theories are rooted in the nature of the testimony these witnesses could provide which, according to appellant, supported his claim at trial that the sexual encounter between him and M.K. was consensual.

To show that the trial court abused its discretion in denying appellant's motion for new trial based on ineffective assistance of counsel, the record must reflect that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Appellant has the burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697.

To show that the trial court abused its discretion in denying appellant's motion for new trial based on newly discovered evidence, the record must reflect that "[M]aterial evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. ANN. art. 40.001. Evidence is "material" if it meets a four-part test: (1) the newly discovered evidence was unknown to trial counsel at the time of trial; (2) his failure to discover the evidence was not due to his want of diligence; (3) the evidence is admissible and not merely cumulative, corrorative,

–8–

collateral, or impeaching; and (4) the evidence is probably true and would probably bring about a different result in another trial. *See State v. Arizmendi*, 519 S.W.3d 143, 149 (Tex. Crim. App. 2017); *Keeter v. State*, 74 S.W.3d 31, 36–37 (Tex. Crim. App. 2002).

As already set forth, Pickens testified at the hearing on the motion for new trial that he had a conversation with M.K. in which she told him that she had sex with appellant on the way home after a football game. Pickens testified that he got the impression it was consensual "from the way she spoke and acted." Pickens never stated that M.K. told him that she wanted to have sex with appellant, nor was he asked by counsel if M.K. told him she agreed to have sex with appellant. Further, appellant's attorney never asked Pickens if M.K. told him that during the incident, she hit appellant and told him, "No, no."

The testimony of Jordan Saenz and David Weaks was similar to that of Pickens. Saenz testified that M.K. told her about a sexual encounter with appellant where appellant picked her up in his truck. Saenz testified when M.K. told her about the incident, M.K. did not say anything about whether or not appellant forced her to have sex or give her any indication that it was not something she wanted to do. Saenz testified, "I thought it was consensual from how she was talking about it…." Saenz never testified that M.K. told her that she wanted to have sex with appellant, nor was she asked by counsel if M.K. told her she agreed to have sex with appellant. Saenz. Weaks's testimony was even more general. Weaks could not remember any details about the conversation, just that it appeared to him that M.K. was agreeable to having sex with appellant. Weaks testified M.K. did not say anything that made him think that she had been forced to have sex with appellant. Both Saenz and Weaks conceded that M.K. never specifically stated she consented to have sex with appellant; that was just their interpretation. Further, appellant's attorney never asked Saenz or Weaks if M.K. told them that during the incident she hit appellant and told him, "No, no."

We conclude that the conversations Pickens, Saenz and Weaks had with M.K. about her sexual encounter with appellant are inadmissible hearsay. *See* TEX. R. EVID. 801(d), 802.[2] Appellant argues that the evidence is not hearsay because it falls under the hearsay exceptions for admissions by a party opponent and statement against interest. *See* TEX. R. EVID. 801(e)(2), 803(24). We disagree. In a criminal case, the defendant and the State are party opponents, not the alleged victim. *See Owens v. State*, 916 S.W.2d 713, 717–18 (Tex. Crim. App. 1996); *Davis v. State*, 177 S.W.3d 355, 362 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Logan v. State*, 71 S.W.3d 865, 869 (Tex. App.—Fort Worth 2002, pet. ref'd). Further, to qualify as an exception under Rule 803(24), the statement must be against the declarant's interest at the time it was made. *See Glover v. State*, 102 S.W.3d 754, 766 (Tex. App.—Texarkana 2002, pet. ref'd); *Burks v. State*, 40 S.W.3d 698, 701 (Tex. App.—Waco 2001, pet. ref'd); *Bell v. State*, 877 S.W.2d 21, 24 n. 2 (Tex. App.—Dallas 1994, pet. ref'd). The conversations the witnesses had with M.K. occurred over a year before M.K. made any allegations against appellant regarding the sexual assault.

Appellant also argues that the testimony would be admissible as lay opinion evidence under Rule 701. To be admissible as a lay opinion under Rule 701, the witness must establish personal knowledge of the events from which his opinion is drawn and, the opinion drawn must be rationally based on that knowledge. *See Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997); TEX. R. EVID. 701(a). However, Pickens, Saenz and Weaks's opinions and impressions were not

---

[2] Initially in his brief, without citing Rule 613, appellant assumes that the proffered testimony, while hearsay, is admissible for impeachment purposes as evidence of prior inconsistent statements made by M.K. regarding the consensual nature of the sexual encounter with appellant. *See* TEX. R. EVID. 613. Thus, in order to meet the third prong of the materiality test, appellant argues that the testimony is not merely impeachment evidence but rather direct evidence of appellant's innocence. We do not conclude that such testimony qualifies as prior inconsistent statements under the rules of evidence. Appellant has cited no authority, and we have found none, for the proposition that a witness's general impression about an incident that the witness spoke to the victim about is admissible impeachment evidence. As noted above, Pickens testified that he formed the "impression" that the sex between appellant and M.K. was consensual. Pickens never stated that M.K. told him that she wanted to have sex with appellant, nor was he asked by counsel if M.K. told him she agreed to have sex with appellant. Both Saenz and Weaks conceded that M.K. never specifically stated she consented to have sex with appellant and that it was just their interpretation. Further, appellant's attorney never asked Pickens, Saenz or Weaks if M.K. told them that during the incident she hit appellant and told him, "No, no."

derived from their perceptions of what they saw, heard, and observed during M.K.'s encounter with appellant because they were not present. *See Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002) ("[I]f the witness perceived events and formed an opinion that a reasonable person could draw from the facts, then the first part of the rule is met."); *Fairow*, 943 S.W.2d at 899 ("[W]hile a witness cannot possess personal knowledge of another's mental state, he may possess personal knowledge of facts from which an opinion regarding mental state may be drawn."). The opinions proffered by Pickens, Saenz and Weaks that the sexual encounter between M.K. and appellant was consensual is not based on personal knowledge, and therefore inadmissible.

Finally, appellant argues that the failure to allow him to present these witnesses would constitute an erroneous limitation on his constitutional right to present a defense and supports his claim with cases that recognize the constitutional implications of denying a defendant the right to present evidence concerning a witness's possible motives, bias, and prejudice. *See Hammer v. State*, 296 S.W.3d 555 (Tex. Crim. App. 2009); *Wiley v. State*, 74 S.W.3d 399 (Tex. Crim. App. 2002); *Clay v. State*, 390 S.W.3d 1 (Tex. App.—Texarkana 2012, pet. ref'd). The concerns expressed in these cases regarding the right to present a defense are not applicable to the circumstances in the instant case. In *Potier v. State*, the court of criminal appeals explained that there are two distinct scenarios in which rulings excluding evidence might rise to the level of a constitutional violation: (1) a state evidentiary rule which categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence which is vital to his defense; and (2) a trial court's clearly erroneous ruling excluding otherwise relevant, reliable evidence which "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense. *Potier v. State*, 68 S.W.3d 657, 659–65 (Tex. Crim. App. 2002). Appellant does not complain that the evidentiary hearsay rules applicable in this case are themselves arbitrary

–11–

rules that discriminate against his right to present a defense, nor has he shown that the trial judge's ruling on the motion for new trial was clearly erroneous that it violated his constitutional rights. Appellant merely argues that any interpretation in the rules of evidence under which the exclusion of this evidence could be justified should be set aside.

Having determined that the testimony offered by Pickens, Saenz and Weaks at the motion for new trial hearing was inadmissible hearsay, we conclude that appellant has failed to establish that he is entitled to a new trial under either of his two legal claims.[3]  Under the ineffective assistance of counsel claim, appellant did not meet the first prong of the *Strickland* test.  Appellant cannot show that counsel's failure to present the testimony of Thorne Pickens at trial constituted deficient performance because counsel could not have performed deficiently by failing to introduce inadmissible evidence.  *See Strickland*, 466 U.S. at 688; *Garza v. Stephens*, 738 F.3d 669, 677 (5th Cir. 2013); *Aquino v. State*, No. 04-08-00445-CR, 2009 WL 3030749, at *6 (Tex. App.—San Antonio Sept. 23, 2009, no pet.) (mem. op., not designated for publication).  Under the newly discovered evidence claim, appellant did not meet the third prong of the materiality test because the conversations Saenz and Weaks had with M.K. are inadmissible hearsay.

We conclude the trial court did not abuse its discretion in denying his motion for new trial. Appellant's first and second issues are overruled.

---

[3] Because we have determined Pickens, Saenz, and Weaks's testimony is inadmissible, we need not review the trial court's further reason for denying the motion for new trial due to their lack of credibility.

**CONCLUSION**

We affirm the trial court's judgment.

/David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
171104F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID LANE CHRISTOFFEL, Appellant

No. 05-17-01104-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th Judicial District Court, Hunt County, Texas
Trial Court Cause No. 31,348.
Opinion delivered by Justice Evans, Justices Myers and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 18th day of December, 2018.