**Opinion filed December 31, 2019**



# In The

# Eleventh Court of Appeals

_____

## No. 11-17-00318-CR

_____

## SIMON MADRID GARCIA JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR46871**

## O P I N I O N

A Midland County jury convicted Appellant, Simon Madrid Garcia Jr., of one count of aggravated sexual assault of a child and one count of indecency with a child by contact. The jury assessed a punishment of imprisonment in the Institutional Division of the Texas Department of Criminal Justice for forty years and ten years, respectively. The trial court sentenced Appellant accordingly. Appellant raises five issues on appeal, which concern the jury charge, the sufficiency of the evidence, Appellant's motion for new trial, and spoliation of evidence. We affirm.

*Background*

When N.D. was eight years old, he lived in Midland with his mother, brother, and sister. N.D.'s mother and Appellant were friends. In February 2016, N.D. complained to his mother and grandmother that Appellant had touched N.D.'s private area and that Appellant had also put his penis in N.D.'s mouth. Appellant was charged by indictment with aggravated sexual assault in count one and indecency with a child by contact in count two. Appellant entered a plea of not guilty and was tried before a jury.

At trial, N.D. testified via recorded video. N.D. testified that the first incident occurred after Appellant had taken N.D. to get a haircut. After the haircut, Appellant took N.D. to Appellant's house. While N.D. was in the restroom washing his hands, Appellant came in, removed N.D.'s pants and underwear, and used his hand to touch N.D.'s genitals. Using a drawing of a male child provided by the State, N.D. also diagrammed where Appellant had touched him, and the diagram was provided to the jury.

N.D. testified that the second incident occurred while Appellant was looking after N.D. because N.D. was sick. N.D. stated that Appellant took N.D. to the store for some food. During their trip back, Appellant stopped in an alley and told N.D. to get out of the car. Appellant then took N.D. between two dumpsters and removed N.D.'s pants and underwear. While again diagramming, N.D. said that Appellant also pulled down his pants and put Appellant's sexual organ "in there," referring to N.D.'s "butt." The second diagram was also published to the jury. N.D. further testified that Appellant was moving around while Appellant was touching him.

N.D.'s mother also testified at trial. N.D.'s mother testified that Appellant often spent time with her family and sometimes provided financial support. She also said that she considered Appellant a friend and trusted him to watch her children and take them to various places in town. N.D.'s mother also explained that she had

waited to report N.D.'s outcry to the police because she was scared that it would affect her custody of the children. The jury also heard testimony from N.D.'s grandmother, who testified as to N.D.'s behavioral changes before his outcry. N.D.'s brother testified about times where the children had been left alone with Appellant.

Next, the State called Maura Jarldane, the therapy director for the Midland Rape Crisis and Children's Advocacy Center, to testify. She testified as an expert concerning characteristics of sexually abused children, counseling of sexually abused children, and delayed outcries. Donna Doyle, the SANE nurse who examined N.D., testified about N.D.'s examination. She also explained that N.D.'s exam did not show any physical trauma but that a lack of physical trauma is normal for delayed exams. Lastly, the State offered testimony from David Olvera, the police officer who investigated the case.

In Appellant's defense, multiple witnesses testified as to Appellant's reputation as a children's athletics coach. Additionally, Appellant's brother-in-law testified about how N.D. and his siblings did not act reserved around Appellant. Perry Marchioni also testified as an expert in the psychology of children who have been physically or sexually abused. Marchioni stated that N.D.'s responses should have been more forthcoming and that N.D. did not display an increased knowledge about sexual organs as Marchioni would expect.

Lastly, Appellant testified in his own defense. Throughout his testimony, Appellant denied ever inappropriately touching N.D. Appellant urged that he had been alone with N.D. only once when he took N.D. to the store. Additionally, Appellant acknowledged taking N.D. to get a haircut but Appellant stated that they were not alone because N.D.'s brother was also with them.

Based on this evidence, the jury found Appellant guilty of both aggravated sexual assault of a child and indecency with a child by contact. Appellant was sentenced to imprisonment for forty years and ten years, respectively.

*Analysis*

Appellant's first two issues concern the jury charge. Appellant first asserts that the jury charge erroneously lacked a jury unanimity instruction and, thus, violated his constitutional right to a unanimous verdict. Specifically, Appellant argues that there should have been a unanimity instruction as to whether he used his sexual organ to penetrate *or* to contact the child's anus.

Appellate standards of review for claims of jury charge error are well settled. We must first decide whether error exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error exists, we must determine whether the error caused sufficient harm to warrant reversal. *Id.* at 743–44. "The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection." *Id.* at 743. When the error was not objected to, reversal is proper only if the error caused actual, egregious harm to the defendant. *Id.* at 743–44; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Actual harm is established when the erroneous jury instruction affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory. *Ngo*, 175 S.W.3d at 750 (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)). When assessing harm based on the particular facts of a case, we consider the entire jury charge; the state of the evidence, including contested issues and the weight of the probative evidence; the parties' arguments; and all other relevant information in the record. *Almanza*, 686 S.W.2d at 171.

The Texas Constitution requires jury unanimity in felony cases, and state statutes require jury unanimity in all criminal cases. *Ngo*, 175 S.W.3d at 745; *see also* TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West

4

Supp. 2019), arts. 37.02, 37.03 (West 2006), arts. 45.034–.036 (West 2018). Thus, in Texas, a criminal defendant "has the right to a unanimous jury verdict on each element of the charged offense." *French v. State*, 563 S.W.3d 228, 233 (Tex. Crim. App. 2018) (citing TEX. CONST. art. V, § 13 and other authorities). Reaching a unanimous verdict means that the jury must "agree upon a single and discrete incident" that constitutes committing the alleged offense. *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007). When the State charges different criminal acts, the jury charge must instruct the jury that it cannot return a guilty verdict unless it unanimously agrees upon the commission of any one or more of the criminal acts. *Ngo*, 175 S.W.3d at 744. Authorizing a jury to render a guilty verdict without reaching a unanimous decision as to each element of the charged offense is error. *French*, 563 S.W.3d at 233 (citing *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. (2011)).

Under relevant subsections of Section 22.021 of the Texas Penal Code, a person commits aggravated sexual assault of a child if the person intentionally or knowingly:

> (i) causes the penetration of the anus or sexual organ of a child by any means; [or]
>
> . . . .
>
> (iv) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor[.]

TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (iv) (West 2019). The Court of Criminal Appeals has explained that the subsections of Section 22.021(a)(1)(B), which describe different ways of committing aggravated sexual assault of a child, are separate and distinct offenses. *French*, 563 S.W.3d at 233–34; *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999) (holding that the different subsections of Section 22.021(a)(1)(B) constitute separate offenses for double jeopardy purposes).

5

In this case, the application paragraph of the jury charge instructed the jury to convict Appellant if it believed beyond a reasonable doubt that he "intentionally or knowingly cause[d] the *contact or penetration* of the anus of [N.D.] by the sexual organ of the Defendant" (emphasis added). However, the Court of Criminal Appeals has previously concluded in a similar scenario that, with respect to penile contact versus penile penetration of the same orifice, "there was no lack of jury unanimity" despite the absence of a jury charge on unanimity. *Jourdan v. State*, 428 S.W.3d 86, 97 (Tex. Crim. App. 2014). The court explained: "In the single transaction presented in this case, the appellant cannot have penetrated [the victim's] sexual organ without having first contacted it." *Id.* This is because "contact is subsumed by penetration." *Id.* at 98; *see French*, 563 S.W.3d at 235. Due to the nature of the crime, every juror who found penetration would have also found contact. Thus, there could be no lack of agreement that Appellant *at least* caused his sexual organ to contact N.D.'s anus. Accordingly, the jury charge in this case did not permit Appellant to be convicted by a nonunanimous verdict. We overrule Appellant's first issue.

In his second issue, Appellant argues that an erroneous definition of aggravated sexual assault in the abstract portion of the jury charge caused Appellant to suffer egregious harm. As stated above, because Appellant did not preserve the jury charge error, the resolution of this issue requires an egregious harm analysis.

In a jury charge, the application paragraph authorizes a conviction—not the abstract portion. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012); *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996). "The abstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *Crenshaw*, 378 S.W.3d at 466 (citing *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)). An abstract instruction on a theory of law that is not applied to the facts does not

6

authorize the jury to convict upon that theory. *Hutch*, 922 S.W.2d at 172. Generally, an abstract instruction causes reversible error only when the instruction is an incorrect or misleading statement of law that the jury must understand to complete the application paragraph. *Crenshaw*, 378 S.W.3d at 466.

In this case, as the State concedes, the abstract portion of the jury charge incorrectly defined aggravated sexual assault. The offense was defined as being committed "if the person intentionally or knowingly causes the contact or penetration of the anus of a child *by any means*" (emphasis added). In actuality, penetration of the anus is prohibited by any means, but contact is not prohibited in such a manner. *See* PENAL § 22.021(a)(1)(B)(i), (iv). Section 22.021(a)(1)(B)(iv) only prohibits causing a child's anus to contact the mouth, anus, or sexual organ of another person. Thus, it was erroneous to include an instruction defining the offense as prohibiting contact *by any means*.

Despite this error, we find that Appellant did not suffer egregious harm because the incorrect definition was only in the abstract section of the jury charge and was not incorporated into the application paragraph. *See Crenshaw*, 378 S.W.3d at 467. The application paragraph tracked the language of the indictment, which alleged "contact and penetration of the anus of [N.D.] by the sexual organ of [Appellant]." Thus, the jury's consideration was restricted to only those allegations contained in the indictment, which are prohibited by Section 22.021(a)(1)(B). Absent evidence to the contrary, we presume that the jury understood and followed the court's charge. *Hutch*, 922 S.W.2d at 172. Therefore, we presume that the jury convicted Appellant of aggravated sexual assault pursuant to the application paragraph, which specifically required the jury to assess Appellant's guilt based on behavior prohibited by the statute. We overrule Appellant's second issue.

In his third issue, Appellant argues that the evidence is insufficient to support his conviction for the offenses of aggravated sexual assault of a child and indecency with a child by contact.

The standard of review for sufficiency of the evidence is whether any rational jury could have found Appellant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *see Malik*, 953 S.W.2d at 240 ("[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case."). We review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inferences raised by the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

As relevant to this case, the charge of aggravated sexual assault of a child requires proof that the accused intentionally or knowingly caused the penetration of a child's anus by any means or caused the anus of a child under fourteen to contact the mouth, anus, or sexual organ of another person. PENAL § 22.021(a)(1)(B)(i), (iv). Indecency with a child by contact requires proof that the accused touched the genitals of a child under seventeen with the intent to arouse or gratify the sexual desire of any person. *Id.* at § 21.11(a)(1), (c)(1). In a prosecution for indecency with

8

a child, a defendant's intent to arouse or gratify his sexual desire can be inferred from conduct alone, and no oral expression of intent or visible evidence of sexual arousal is necessary. *Tienda v. State*, 479 S.W.3d 863, 873 (Tex. App.—Eastland 2015, no pet.).

By statute, a complainant's testimony may be sufficient evidence to convict a defendant. CRIM. PROC. art. 38.07. It is also well settled that the uncorroborated testimony of a child victim alone can be sufficient to support a conviction of aggravated sexual assault of a child and of indecency with a child by contact. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *Tienda*, 479 S.W.3d at 873.

Here, there was sufficient evidence to support convictions for both offenses. As to the indecency-by-contact charge, N.D. testified that, while N.D. was alone with Appellant at Appellant's house, Appellant came into the bathroom where N.D. was washing his hands and removed N.D.'s pants and underwear. N.D. then testified that Appellant used his hand to touch N.D.'s genitals. N.D. also diagrammed where Appellant touched N.D.; the diagram showed that Appellant touched N.D.'s genitals. Regarding the aggravated-sexual-assault offense, N.D. testified that, after Appellant drove N.D. to the store, Appellant told N.D. to get out of the car. Appellant then took N.D. between two dumpsters and removed N.D.'s pants and underwear. While again diagramming, N.D. testified that Appellant also pulled down Appellant's pants and put Appellant's sexual organ "in there," referring to N.D.'s "butt." N.D. further testified that Appellant was moving around while Appellant was touching him. Moreover, the diagrams of the two incidents were published to the jury.

To support his contention that the evidence is insufficient, Appellant argues that N.D.'s testimony was inconsistent and "atypical" of abuse victims. Appellant asserts that "credible testimony" provided by the defense discredits N.D.'s testimony. But the jury is the exclusive judge of witnesses' credibility and of the

weight that should be given to their testimony. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Furthermore, child victims of violent crimes cannot be expected "to testify with the same clarity and ability as is expected of mature and capable adults." *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). Appellant also argues that there was no physical evidence of the offenses and that N.D. delayed in his outcry and N.D.'s mother delayed in reporting. However, "[p]hysical evidence and a timely report to the authorities are not required to support a conviction for sexual assault or indecency with a child." *Perez v. State*, 562 S.W.3d 676, 689 (Tex. App.—Fort Worth 2018, pet. ref'd). Therefore, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found Appellant guilty beyond a reasonable doubt of both aggravated sexual assault of a child and indecency with a child by contact. We overrule Appellant's third issue.

In Appellant's fourth issue, he argues that the trial court erred in overruling Appellant's motion for new trial. Appellant moved for a new trial based on, among other things, allegations that the jurors engaged in misconduct by allowing an outside influence to alter jury deliberations. Specifically, Appellant contends that the motion for new trial should have been granted because a bomb threat, which was reported at the conclusion of Appellant's closing argument, was an outside influence that impacted the guilty verdict.

To receive a new trial based on jury misconduct, Appellant must show not only that jury misconduct occurred, but also that it was material and probably caused injury. *Ryser v. State*, 453 S.W.3d 17, 39 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Bogue v. State*, 204 S.W.3d 828, 829 (Tex. App.—Texarkana 2006, pet. ref'd)).

"We review a trial court's denial of a motion for new trial under an abuse of discretion standard." *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App.

2012).  We do not substitute our judgment for the trial court's judgment but, instead, determine whether the trial court's decision was arbitrary or unreasonable.  *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014).  The trial court is the sole judge of a witness's credibility.  *Id.*  "Even if the testimony is not controverted or subject to cross-examination, the trial judge has discretion to disbelieve that testimony."  *Id.*  "We view the evidence in the light most favorable to the trial judge's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party."  *Id.*  When denying a motion for a new trial, a trial judge abuses its discretion only if no reasonable view of the record could support the ruling.  *Id.*

When there is an allegation of juror misconduct, Rule 606(b) allows a juror to testify on whether "an outside influence was improperly brought to bear on any juror."  TEX. R. EVID. 606(b); *see McQuarrie*, 380 S.W.3d at 154.  Then, without delving into the jury's deliberations, the trial court must conduct an objective analysis to determine whether there is a reasonable probability that the outside influence had a prejudicial effect on the "hypothetical average juror."  *Colyer*, 428 S.W.3d at 129.

The Court of Criminal Appeals has defined an outside influence as "something originating from a source outside of the jury room and other than from the jurors themselves."  *McQuarrie*, 380 S.W.3d at 154.  But the court has further explained that not everything that comes from outside the jury room qualifies as an outside influence.  *Colyer*, 428 S.W.3d at 127.  An outside influence does not include "influences or information that are unrelated to the trial issues."  *Id.*  In this case, the bomb threat was not an outside influence within the purpose of Rule 606(b); there is nothing in the record to show that the bomb threat was related to any factual or legal issue at trial.

Further, even assuming arguendo that the bomb threat was an outside influence, the trial court would still not have abused its discretion. The existence of an outside influence does not result in an automatic reversal. *Ryser*, 453 S.W.3d at 41. An outside influence is only problematic "if it has the effect *of improperly* affecting a juror's verdict in a particular manner—for or against a particular party." *Id.* (quoting *Colyer*, 428 S.W.3d at 129). Here, Appellant failed to show that the existence of the bomb threat would affect the "hypothetical average juror" in this manner. Accordingly, the trial court did not abuse its discretion in overruling Appellant's motion for new trial. We overrule Appellant's fourth issue.

In his fifth issue, Appellant argues that the trial court erred by denying his motion to dismiss the charging instrument based on the State's spoliation of evidence. Appellant filed a pretrial discovery motion requesting that the Texas Department of Family and Protective Services produce an audio recording of an interview with N.D. However, when Appellant received the audio recording, it contained no intelligible information because the audio of a different interview had been recorded over N.D.'s interview. Appellant concedes that no evidence of bad faith was presented at trial but argues that a showing of bad faith was not necessary because, based on *Brady v. Maryland*, the evidence was material and favorable to Appellant such that there is a reasonable probability that, had the evidence been disclosed, the outcome of the trial would have been different. *See Brady v. Maryland*, 373 U.S. 83 (1963).

We review a trial court's denial of a motion to dismiss a charging instrument for an abuse of discretion. *Gutierrez v. State*, 419 S.W.3d 547 (Tex. App.—San Antonio 2013, no pet.). "A trial [court] abuses [its] discretion when [its] decision is so clearly wrong as to lie outside the zone within which reasonable persons might disagree." *Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005).

When addressing the State's failure to preserve evidence in a criminal trial, there is a distinction between "material exculpatory evidence" and "potentially useful evidence." *See Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988); *Ex parte Napper*, 322 S.W.3d 202, 229–31 (Tex. Crim. App. 2010). If the State withholds material exculpatory evidence, a federal due process violation occurs regardless of whether the State acted in bad faith. *Illinois v. Fisher*, 540 U.S. 544, 547 (2004). Thus, a *Brady* claim requires proof that the sought-after evidence was both material and favorable to the defendant such that there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011).

By contrast, to prove a federal due process violation based on a state's destruction of merely "potentially useful evidence," a defendant must show that the State acted in bad faith in destroying the evidence. *Fisher*, 540 U.S. at 547–48; *Youngblood*, 488 U.S. at 57–58. *Youngblood* described potentially useful evidence as "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." 488 U.S. at 57. "Although courts occasionally blur the distinction between *Youngblood* and *Brady*, *Youngblood* is properly applied to cases in which the government no longer possesses the disputed evidence, whereas *Brady* is properly applied to cases in which exculpatory evidence remains in the government's possession." *Moody v. State*, 551 S.W.3d 167, 170 (Tex. App.—Fort Worth 2017, no pet.) (footnote omitted) (citing *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999)).

In this case, Appellant contends that the audio recording he received from the Texas DFPS was destroyed because audio from a different interview was recorded over the audio of N.D.'s interview. Therefore, although Appellant phrased his complaint as a *Brady* complaint, it is more properly considered as a complaint under *Youngblood* for the destruction of "potentially useful evidence." *See Youngblood*,

13

488 U.S. at 58 (holding that the police's failure to preserve potentially useful evidence was not a denial of due process of law absent the defendant's showing of bad faith on the part of the police); *see also Rodriguez v. State*, 491 S.W.3d 18, 31 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (treating a *Brady* claim about lost surveillance video as a *Youngblood* claim).

Such a claim requires a showing of bad faith. *Fisher*, 540 U.S. at 547–48. However, Appellant does not argue to this court that the State acted in bad faith, and there was no showing of bad faith at trial. Appellant has thus forfeited any claim that the State failed to preserve "potentially useful evidence" because such a claim requires a showing of bad faith from the State. *See* TEX. R. APP. P. 33.1(a)(1); *Youngblood*, 488 U.S. at 57–58; *see also Moody*, 551 S.W.3d at 171. We therefore overrule Appellant's fifth issue.

*This Court's Ruling*

We affirm the judgments of the trial court.


KEITH STRETCHER

JUSTICE


December 31, 2019

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.