

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00007-CR

**HANNAH DILLARD,**

                                                                **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                **Appellee**

---

**From the 443rd District Court**
**Ellis County, Texas**
**Trial Court No. 44417CR**

---

## MEMORANDUM OPINION

---

In two issues, appellant, Hannah Dillard, complains that: (1) the trial court abused its discretion by denying her motion for new trial because she was denied her right to effective assistance of counsel regarding plea advice; and (2) her trial counsel's failure to introduce testimony that she was a suitable candidate for community supervision and failure to argue in closing argument that the jury should recommend community

supervision denied Dillard of her right to effective assistance of counsel.  Because we overrule both of Dillard's issues, we affirm.[1]

## Background

In the early morning hours of October 22, 2017, Southern Methodist University students Khyree Henderson, Noah Lane, Jabari Ford, Alexa Clinton, and Bryanna Hernandez were driving back from a fraternity party at Baylor University in Waco, Texas. While traveling northbound on Interstate 35, the vehicle driven by the SMU students was struck by a vehicle driven by Dillard, who was driving and swerving the wrong way in the northbound lanes of Interstate 35.  As a result of the collision, the SMU students sustained significant injuries.[2]  Investigators later learned that Dillard's blood-alcohol concentration was 0.24 at the time of the collision.  Investigators also discovered that Dillard tested positive for amphetamines, which Dillard attributed to ADHD medication, and that she had struck another vehicle while driving the wrong way on Interstate 35.

Dillard was charged in one indictment with one count of intoxication assault and one count of aggravated assault with a deadly weapon.  The State agreed to abandon the one count of intoxication assault, and Dillard pleaded guilty to aggravated assault with a deadly weapon before the jury.  After a hearing, the jury sentenced Dillard to twelve

---

[1] As this is a memorandum opinion and the parties are familiar with the facts, we only recite those necessary to the disposition of the case.  *See* TEX. R. APP. P. 47.1, 47.4.

[2] Clinton, in particular, was in the front passenger seat and sustained injuries that left her permanently disabled.

years in prison. The trial court certified Dillard's right to appeal, and this appeal followed.

## Trial Counsel's Plea Advice

In her first issue, Dillard contends that the trial court abused its discretion by denying her motion for new trial based on her trial counsel's purported failure to advise her that the State would seek a harsher punishment at trial if she rejected the State's plea offer.

### STANDARD OF REVIEW

We review a trial judge's denial of a motion for new trial under an abuse-of-discretion standard. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014); *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). A trial judge abuses his discretion by denying a motion for new trial when no reasonable view of the record could support his ruling. *Colyer*, 428 S.W.3d at 122; *Holden*, 201 S.W.3d at 763. We view the evidence in the light most favorable to the trial judge's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party. *Colyer*, 428 S.W.3d at 122; *see Quinn v. State*, 958 S.W.2d 395, 402 (Tex. Crim. App. 1997).

At the hearing on a motion for new trial, the judge alone determines the credibility of the witnesses. *Colyer*, 428 S.W.3d at 122; *Salazar*, 38 S.W.3d at 148. Even if the testimony is not controverted or subject to cross-examination, the trial judge has discretion to disbelieve that testimony. *Colyer*, 428 S.W.3d at 122; *see Masterson v. State*, 155 S.W.3d 167, 171 (Tex. Crim. App. 2005).

APPLICABLE LAW

A guilty plea must be made knowingly, intelligently, and voluntarily. *Fuller v. State*, 253 S.W.3d 220, 229 (Tex. Crim. App. 2008); TEX. CODE CRIM. PROC. ANN. art. 26.13(b). "A plea of guilty is not knowingly and voluntarily entered if it is made as a result of ineffective assistance of counsel." *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980). A claim of ineffective assistance may be raised in a motion for new trial. *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009).

To prevail on an ineffective-assistance-of-counsel claim, the familiar *Strickland v. Washington* test must be met. *Wiggins v. State*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 674 (1984)); *Andrews v. State*, 159 S.W.3d 98, 101-02 (Tex. Crim. App. 2005). Under *Strickland*, Dillard must prove by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the defense was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *see Andrews*, 159 S.W.3d at 101. Absent both showings, an appellate court cannot conclude the conviction

resulted from a breakdown in the adversarial process that renders the result unreliable. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

To establish deficiency under the first prong of *Strickland*, Dillard must prove by a preponderance of the evidence that her counsel's representation objectively fell below the standard of professional norms. *Smith*, 286 S.W.3d at 340. To show prejudice, Dillard must show there is a reasonable probability that, but for her counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2052). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome, meaning counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.*

Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if Dillard overcomes the strong presumption that her counsel's conduct fell within the range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also Stafford v. State*, 813 S.W.2d 503, 508-09 (Tex. Crim. App. 1991) (noting that we indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy). The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). "Isolated instances in the

record reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of the trial counsel's performance for examination." *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990).

DISCUSSION

In her testimony at the hearing on her motion for new trial, Dillard stated that her trial counsel, E.X. Martin, did not discuss with her the possibility that she could receive a maximum sentence of twenty years in prison. Dillard believed that the highest sentence she could receive at trial was eight years, even if she rejected the State's plea offer. Dillard emphasized: "It was just never explained that they [the State] would be pushing for more if we went to trial."

However, on cross-examination, Dillard admitted that she signed paperwork rejecting the State's plea offers of eight years in prison. The paperwork for the State's first plea offer provided the following:

> My attorney has advised me that upon rejection of the plea bargain, it is possible that upon a trial of this case I could receive more time than has been offered in the plea bargain. Nonetheless, I hereby reject the plea bargain offer, knowing said offer will be withdrawn and the case will proceed to trial.

The State's second plea offer, which Dillard also rejected, stated:

> I have thoroughly discussed with my Attorney all the legal ramifications associated in going forward with jury trial, including without limitation: (i) the risk of being found guilty by a jury; and (ii) the risk of receiving a sentence from the jury which is greater than the sentence associated with

the Plea-Bargain Offer, including the risk of receiving a verdict from the jury during the punishment phase of trial which would require the trial court to sentence me to the maximum range of punishment.

Dillard further admitted that the trial judge admonished her several times of the punishment range, that the sentencing range was discussed during jury selection, and that she understood that twenty years was the maximum punishment she could receive.

Attorney Martin testified at the hearing on Dillard's motion for new trial. Martin, a criminal defense attorney with fifty years of experience, testified that he advised Dillard of the full range of punishment and that he had in-depth conversations with her about her options. Martin believed Dillard to be an intelligent, educated woman; thus, he did not feel the need to "hammer home" his advice. Martin further testified that Dillard "understood" and "knew what we were doing."

Viewing the evidence in the light most favorable to the trial court's ruling, we presume that the trial court implicitly found that trial counsel was not deficient and that there was no reasonable probability that the result of the proceedings would have been different. *See Najar v. State*, 618 S.W.3d 366, 371 (Tex. Crim. App. 2021); *see also Moore v. State*, No. 01-21-00012-CR, 2022 Tex. App. LEXIS 1405, at *14 (Tex. App.—Houston [1st Dist.] Mar. 1, 2022, no pet.) (mem. op., not designated for publication). Furthermore, the trial court had the right to disbelieve Dillard's testimony and to believe the testimony of Martin, whose testimony was supported by the plea paperwork that Dillard signed. *See Odelugo v. State*, 443 S.W.3d 131, 138 (Tex. Crim. App. 2014) (stating that "the trial court,

as the finder of fact on a motion for new trial, retains the prerogative to believe or disbelieve any evidence the probativeness of which depends on the credibility of its source"); *cf. Burnett v. State*, 88 S.W.3d 633, 639 n.22 (Tex. Crim. App. 2002) (noting that in a challenge to a guilty plea, "[i]t is important to distinguish appellant's factual *knowledge* (or lack thereof) . . . from his *ability to judge* the risk that he would actually receive a sentence at the high end of the punishment range. It is the former, appellant's factual knowledge of the punishment range, with which we are concerned." (emphasis in original)). Under the appropriate standard of review, we must presume that the trial court did just that. *See Odelugo*, 443 S.W.3d at 138 (holding that the record "must be inspected from every reasonable vantage in the light most favorable to the trial court's ruling, and found to have been deficient in each, before it may be overturned as an abuse of discretion").

Accordingly, we conclude that Dillard did not meet her burden of proving by a preponderance of the evidence that Martin performed deficiently in handling her guilty plea. *See Smith*, 286 S.W.3d at 340. And as such, we cannot conclude that the trial court abused its discretion by denying Dillard's motion for new trial. *See Colyer*, 428 S.W.3d at 122; *Salazar*, 38 S.W.3d at 148. We overrule Dillard's first issue.

**The Sentencing Hearing**

In her second issue, Dillard complains that her trial counsel was ineffective for not asking her pretrial supervision officer if she would be a good candidate for community

supervision and for not directly asking the jury to assess community supervision in closing argument.

At the outset, we note that Dillard did not raise this claim of ineffective assistance of counsel in her motion for new trial where trial counsel testified. Trial counsel should ordinarily be afforded an opportunity to explain his or her actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). When the record is silent regarding the reasons for counsel's conduct, as is the case here, a finding that counsel was ineffective requires impermissible speculation by the appellate court. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Thus, absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate or decide an ineffective-assistance-of-counsel claim. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To warrant reversal without affording counsel an opportunity to explain his or her actions, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

During a hearing outside the presence of the jury, the State raised a motion in limine regarding Dillard's final defense witness, Gloria Aguilar. The State was concerned that Dillard wanted to question Aguilar, Dillard's pretrial supervision officer, about whether Dillard would be a good candidate for community supervision. The State

objected to this question because this was expert testimony, and because Dillard had not given notice that Aguilar would testify as an expert. Counsel for Dillard indicated that she did not intend to ask Aguilar about Dillard's "suitability for probation," but rather whether Dillard would report and abstain from drinking alcohol if she were ordered to do so.

Dillard later called Aguilar to testify, and Aguilar explained that she had been supervising Dillard since May or June of 2019. Aguilar met with Dillard weekly for court-ordered urine tests. Aguilar testified that she had no reason to believe that Dillard would not report, and that Dillard had not failed a test so far. Aguilar believed that Dillard had been compliant during supervision and had not caused any problems.

There is no evidence in this record that Dillard's trial counsel acted without sound trial strategy in her questioning of Aguilar. Counsel's questioning of Aguilar established that Dillard had reported to pretrial supervision as ordered and complied with mandated urine testing; that Dillard had been compliant and not caused any problems; and that Aguilar believed Dillard would comply with the reporting and testing requirements if placed on community supervision. These questions addressed Dillard's suitability for community supervision. Asking the follow-up question of whether Aguilar believed Dillard was a good candidate for community supervision would not have added significantly to Aguilar's testimony. Further, the mere fact that another attorney would have done things differently does not render trial counsel ineffective. *Ingham v. State*, 679

S.W.2d 503, 509 (Tex. Crim. App. 1984) ("The fact that appellant's counsel made mistakes at trial, and other counsel might have tried the case differently, does not show ineffective representation."). Thus, we cannot say that Dillard has overcome the strong presumption that trial counsel's actions were based upon sound trial strategy. *See Rylander*, 101 S.W.3d at 110; see also *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) ("An appellate court should be especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions—whether those actions were of strategic design or the result of negligent conduct."); *Stafford*, 813 S.W.2d at 508-09.

In closing argument, counsel for Dillard emphasized that Dillard had lived a good life but had one "incredibly bad decision" that resulted in severe consequences. Counsel acknowledged the damage caused to the innocent students and their families and argued that Dillard had accepted responsibility for her actions. Counsel further argued that the jury should look at the entirety of Dillard's life when assessing punishment and that Dillard's vocation as a nurse, as well as her compliance with pretrial supervision requirements, should merit a less severe punishment. Counsel also mentioned that the jury could give Dillard probation so that she could "go out and do some good in the

world," rather than simply sit in prison. Counsel explained that supervision meant that the judge would control Dillard's life and implied that was sufficient punishment.

Counsel's closing did not waive the defense case or foreclose the jury's ability to assess community supervision. Counsel's strategy of presenting the jury with the option to assess community supervision, rather than asking for it directly, could be an effective way to empower the jury, especially when counsel was emphasizing that the jury be merciful in assessing Dillard's punishment. Regardless, the record is once again silent regarding trial counsel's strategy. And as mentioned earlier, that another attorney might have tried the case differently, or made a different closing argument, does not render trial counsel ineffective. *See Ingham*, 679 S.W.2d at 509. We cannot say that trial counsel's failure to directly ask the jury to assess community supervision was so outrageous that no competent attorney would have engaged in it. *See Roberts*, 220 S.W.3d at 533; *see also Goodspeed*, 187 S.W.3d at 392. Accordingly, on this record, we conclude that Dillard failed to establish that her trial counsel was ineffective. *See Smith*, 286 S.W.3d at 339-41. We therefore overrule Dillard's second issue.

## Conclusion

Having overruled both of Dillard's issues, we affirm the judgment of the trial court.


STEVE SMITH
Justice

Before Chief Justice Gray,
  Justice Johnson,
  and Justice Smith
Affirmed
Opinion delivered and filed January 4, 2023
Do not publish
[CR25]

